# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-2674

_____

| | | |
|---|---|---|
| Reproductive Health Services of Planned Parenthood of the St. Louis Region, Inc., et al., | * * * * | |
| Plaintiffs - Appellees, | * * | Appeal from the United States District Court for the |
| v. | * * | Western District of Missouri. |
| Jeremiah W. Nixon, Attorney General of Missouri, in his official capacity, | * * * | |
| Defendant - Appellant, | * | |

_____

Submitted: April 14, 2005
Filed: November 16, 2005

_____

Before LOKEN, Chief Judge, FAGG and BYE, Circuit Judges.

_____

LOKEN, Chief Judge.

Former section 188.039 of the Missouri Revised Statutes, enacted in 1986, provided that no physician may perform an abortion unless the woman patient has signed an "informed consent" form stating that her attending physician advised her whether she is pregnant, the risks associated with the abortion procedure to be used, and the alternatives to abortion. The district court enjoined enforcement of this statute in <u>Reproductive Health Servs. v. Webster</u>, 662 F. Supp. 407, 413-16, 430

(W.D. Mo. 1987).[1] In 2003, Missouri enacted a new § 188.039, replacing the former statute with substantially revised "informed consent" provisions. As relevant to this appeal, the new § 188.039 provides:

> 2. Except in the case of medical emergency, no person shall perform or induce an abortion unless at least twenty-four hours prior thereto a treating physician has conferred with the patient and discussed with her the indicators and contraindicators, and risk factors including any physical, psychological, or situational factors for the proposed procedure and the use of medications . . . in light of her medical history and medical condition. . . .

> 3. The patient shall be evaluated by a treating physician during the conference for indicators and contraindicators, risk factors including any physical, psychological, or situational factors which would predispose the patient to or increase the risk of experiencing one or more adverse physical, emotional, or other health reactions to the proposed procedure or drug or drugs in either the short or long term as compared with women who do not possess such risk factors.

> \* \* \* \* \*

> 5. The director of the department of health and senior services shall disseminate a model form that physicians may use as the written statement required by this section, but any lack or unavailability of such a model form shall not affect the duties of the physician [under] this section.

A physician who "willfully and knowingly" performs or assists "any action made unlawful by" § 188.039 is subject to license revocation "by the appropriate state

---

[1]The State did not appeal the district court's invalidation of § 188.039, so that ruling was not considered when the Supreme Court reversed other aspects of the district court's decision in Webster v. Reproductive Health Servs., 492 U.S. 490, 504 n.3 (1989). Planned Parenthood advises that the injunction is still in effect. If so, it would not withstand further review under the Supreme Court's later decision in Planned Parenthood v. Casey, 505 U.S. 833, 881-87 (1992).

licensing board." Mo. Rev. Stat § 188.065. A person who "knowingly" fails to perform an act required by § 188.039 is guilty of a class A misdemeanor. Mo. Rev. Stat. § 188.075.

The plaintiffs (collectively, "Planned Parenthood") filed this official capacity action against Attorney General Jeremiah W. Nixon and two local prosecutors, claiming that the new statute is unconstitutionally vague on its face. After the district court granted a temporary restraining order prohibiting enforcement, Planned Parenthood moved for a preliminary injunction, and both parties moved for summary judgment. The court abstained under the Pullman doctrine,[2] concluding that state court interpretation of the scienter provisions in §§ 188.065 and 188.075 could materially affect the federal constitutional questions. That ruling was not appealed. After this court vacated the over-extended temporary restraining order, the district court issued a preliminary injunction enjoining "defendants, their employees, agents, and successors, and all others acting in concert or participating with them . . . from in any way enforcing the Act." Attorney General Nixon appeals, arguing that the court erred in granting the preliminary injunction and that he is immune from suit under the Eleventh Amendment as construed in Ex parte Young, 209 U.S. 123 (1908), and its progeny. We modify the preliminary injunction.

**I.**

In deciding whether to grant a preliminary injunction, the district court applied the traditional four-part test reviewed in Dataphase Sys., Inc. v. C L Sys., Inc., 640

---

[2]Named after Railroad Comm'n v. Pullman Co., 312 U.S. 496 (1941). See generally Harman v. Forssenius, 380 U.S. 528, 534 (1965). When a federal court abstains under Pullman, the party that commenced the action in federal court may reserve its right to return to federal court to litigate the federal issues by making an "England reservation." See England v. La. State Bd. of Med. Examiners, 375 U.S. 411, 421-22 (1964).

F.2d 109, 113 (8th Cir. 1981) (en banc) -- the threat of irreparable harm to the movant; the balance between this harm and the injury an injunction would inflict on other parties; the movant's probability of success on the merits; and the public interest. We review the grant of a preliminary injunction for abuse of discretion. Bear v. Kautzky, 305 F.3d 802, 803 (8th Cir. 2002).

Beginning with a contention not grounded in the Dataphase factors, Attorney General Nixon argues that the district court abused its discretion because Planned Parenthood asked the court to abstain. Nixon acknowledges, as he must, that the Supreme Court has recognized that an abstaining federal court *may* grant a preliminary injunction while state courts construe the challenged statute. See Babbitt v. United Farm Workers Nat'l Union, 442 U.S. 289, 312 n.18 (1979); Harrison v. NAACP, 360 U.S. 167, 178-79 (1959). But Nixon argues that the injunction was inappropriate in this case because Planned Parenthood now has no incentive to pursue state court litigation to establish the meaning of the ambiguous scienter provisions.

Though this argument has some force, it overlooks relevant procedural history -- it was Nixon who first urged Pullman abstention in his motion to dismiss; Planned Parenthood only suggested abstention when Nixon relied on the scienter provisions in his subsequent motion for summary judgment. In these circumstances, we conclude that the grant of a preliminary injunction was within the district court's discretion if Planned Parenthood satisfied the Dataphase factors. Any foot-dragging by Planned Parenthood in the state courts may be remedied by exercise of the federal court's discretion to modify or vacate the preliminary injunction. See Catrone v. Mass. State Racing Comm'n, 535 F.2d 669, 672 (1st Cir. 1976).

## II.

Turning to the Dataphase factors, to warrant preliminary injunctive relief, a plaintiff must show the threat of irreparable injury. Adam-Mellang v. Apartment

Search, Inc., 96 F.3d 297, 299 (8th Cir. 1996). In Planned Parenthood v. Casey, 505 U.S. at 877-87, the Supreme Court upheld a Pennsylvania informed consent requirement, concluding that a State may constitutionally require physicians, before performing abortions, to provide truthful and not misleading information mandated by the State, so long as the requirement does not place an "undue burden" on the constitutional right of women patients to make the ultimate decision. Although the informed consent provisions of § 188.039 are more extensive than those at issue in Casey, Planned Parenthood made no concrete showing of undue burden on the rights of women patients. Rather, Planned Parenthood argued in the district court (i) that § 188.039 is unconstitutionally vague because it commands physicians to discuss with their patients matters that have no recognized or accepted medical meaning, such as "indicators," "contraindicators," and "situational factors," and (ii) that the continuing risk of prosecution or license revocation for failing to comply with this uncertain mandate provides the requisite threat of irreparable injury.

The district court agreed, concluding that Planned Parenthood physicians face the threat of irreparable injury because they "are being forced to choose between performing abortions without any certainty that they are in compliance with the Act, thereby risking imprisonment, fines, and professional censure, or ceasing the performance of abortions." On appeal, Attorney General Nixon argues that this alleged injury is remote and speculative because no health care professional can be penalized unless he or she "knowingly" fails to comply, and because no civil, criminal, or administrative enforcement of the new statute has occurred or been threatened. Planned Parenthood responds "that when a case involves an alleged deprivation of constitutional rights, no further showing of irreparable injury is necessary." When a state statute is challenged on its face as unconstitutionally vague, and no First Amendment interests are imperiled, that assertion is far too broad.

"A statute can be impermissibly vague . . . . if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it

-5-

prohibits," but the concern is lessened if the statute contains a scienter requirement. Hill v. Colorado, 530 U.S. 703, 732 (2000). As the Supreme Court's discussion in Hill makes clear, facial attacks on statutes that do not threaten First Amendment rights are not favored. Therefore, a concrete showing of irreparable injury is needed to justify preliminary injunctive relief barring enforcement of the challenged statute. In Planned Parenthood v. Citizens for Comm. Action, 558 F.2d 861, 866-67 (8th Cir. 1977), for example, plaintiff faced immediate financial harm unless the challenged ordinance was preliminarily enjoined. Here, on the other hand, the alleged injury is more speculative. While there is force to the contention that physicians will have difficulty determining precisely what § 188.039 mandates before the scienter requirement is clarified and the department of health and senior services disseminates the form prescribed in subsection (5), the core mandate to obtain "informed consent" is both clear and constitutional, and no enforcement action has been threatened. Thus, although the district court did not abuse its discretion in concluding that Planned Parenthood made a showing of threatened irreparable injury, that showing was minimal indeed.

To warrant preliminary injunctive relief, a plaintiff must also show the likelihood of success on the merits. The district court concluded that Planned Parenthood has shown a substantial likelihood of success on the merits because, absent state court interpretation of the statute, physicians "cannot be certain they have evaluated and counseled their patients as required by" the statute's vague, undefined terms. This issue is analytically perplexing -- how is the abstaining federal court to measure plaintiffs' likelihood of success when it has delayed addressing the merits until the state courts construe the challenged statute? The federal court must avoid usurping the state courts' prerogative under Pullman by granting or denying a preliminary injunction based upon a construction urged by one of the parties. But the district court's resolution of this dilemma -- that a preliminary injunction is always warranted until the state courts resolve the perceived ambiguity -- is too intrusive on the State's interest in enforcing its laws. Rather, we believe the proper balance was

-6-

struck by the First Circuit in Catrone, 535 F.2d at 672, where the court held that plaintiff's showing of a substantial likelihood of success on his federal claim, taking into account the uncertainty created by the issue prompting abstention, supported the grant of federal preliminary relief where the other equities strongly favored it.

Here, Planned Parenthood argues that § 188.039 is unconstitutionally vague because physicians cannot be expected to fathom what conduct is mandated by terms that have no recognized or accepted medical meaning. Carried to the extreme, this argument rests on an unsound premise -- that a State's informed consent statute may not require licensed physicians to provide information that goes beyond the realm of their medical judgment or expertise. Absent proof of an undue burden on patients' rights to abortion, such a regulatory mandate will be constitutional if its passes rational basis review. On the other hand, Nixon argues that the statute is not vague because no licensing or criminal penalty may be imposed unless the violation is "knowing." The question, however, is what the medical professional must "know" when he or she is accused of violating the statute by failing to communicate information that goes beyond the bounds of his or her good faith medical judgment.

Though "speculation about hypothetical situations . . . will not support a facial attack on a statute when it is surely valid in the vast majority of its intended applications," Hill, 530 U.S. at 733, we conclude that Planned Parenthood has raised at least a substantial question whether the conduct made punishable by § 188.039 can be divined by physicians in the vast majority of the patient conferences that are its intended application. Cf. Women's Med. Ctr. of N.W. Houston v. Bell, 248 F.3d 411, 422 (5th Cir. 2001). "[W]here the movant has raised a substantial question and the equities are otherwise strongly in his favor, the showing of success on the merits can be less." Dataphase, 640 F.2d at 113. However, here the equities are not strongly in either party's favor. Planned Parenthood's showing of irreparable injury is speculative and minimal, and the remaining Dataphase factors -- the balance of harms and the public interest -- are quite evenly balanced between the interest in not

burdening physicians with vague mandates and the State's interest in enforcing an informed consent mandate that meets <u>Casey</u>'s constitutional limitations.

Because we review the grant of a preliminary injunction for abuse of discretion, we should uphold the injunction "[i]f the underlying constitutional question is close." <u>Ashcroft v. Amer. Civil Liberties Union</u>, 124 S. Ct. 2783, 2790-91 (2004). That is the situation here, and therefore we conclude that the district court did not abuse its discretion in issuing a preliminary injunction. But the injunction that it issued -- an unlimited order enjoining defendants "from in any way enforcing" § 188.039 -- went beyond what was needed to protect Planned Parenthood's physicians from the limited threat of irreparable injury shown. More specifically, the district court abused its discretion (i) in granting an injunction that encompassed subsection 5 of § 188.039, thereby preventing the State's development of the mandated form, and (ii) in failing to clarify that the State is not enjoined from enforcing the "informed consent" requirement upheld in <u>Casey</u>. In addition, because the <u>Dataphase</u> balancing will inevitably change when the state courts have construed the scienter provisions (in a case which, we are advised, has now been argued before the Supreme Court of Missouri), the district court erred in not providing that the preliminary injunction will expire by its own terms ten days after the final state court judgment.

## III.

Finally, Attorney General Nixon argues that the district court erred in refusing to dismiss him as a separate defendant based on the state's Eleventh Amendment immunity. In <u>Ex parte Young</u>, 209 U.S. at 157, the Supreme Court held that the Eleventh Amendment does not bar a suit against a state official to enjoin enforcement of an allegedly unconstitutional statute, provided that "such officer [has] some connection with the enforcement of the act." Nixon argues that he is not sufficiently connected with enforcement of § 188.039 because he has no power to initiate

misdemeanor prosecutions, a task left to local prosecutors, and no power to take adverse licensing actions, a task left to professional licensing boards.

Under Missouri law, the Attorney General is authorized to aid prosecutors when so directed by the Governor, and to sign indictments "when so directed by the trial court." Mo. Rev. Stat. § 27.030. At this stage of the proceedings, we agree with the district court that this statutory authority creates a sufficient connection with the enforcement of § 188.039 to make the Attorney General a *potentially* proper party for injunctive relief, in which case he would be within the scope of the Ex parte Young exception to Eleventh Amendment immunity. However, as neither the Governor nor any state trial court has directed the Attorney General to take action to enforce § 188.039, Planned Parenthood has shown no threat of irreparable injury by the Attorney General. Thus, extending the grant of preliminary injunctive relief to this defendant in his official capacity looks very much like the impermissible grant of federal court relief against the State of Missouri. See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100-03 (1984).

For these reasons, the district court order dated June 22, 2004, is vacated and the case is remanded for the entry of a modified preliminary injunction not inconsistent with this opinion.

BYE, Circuit Judge, dissenting.

Although I would like to reach the merits of the district court's preliminary injunction order, as have the other members of this hearing panel, it is clear the merits cannot be reached. There is no case or controversy between Reproductive Health Services and the Attorney General of Missouri, the only party who appealed the district court's order. The two local prosecutors sued by Reproductive Health, the only proper parties in this action, did not appeal. We therefore lack Article III jurisdiction

-9-

to decide this appeal and are powerless to address the merits. As a consequence, I respectfully dissent.

Attorney General Nixon contends he is immune from suit under the Eleventh Amendment. His position is Reproductive Health cannot sue him for injunctive relief under Ex parte Young, 209 U.S. 123 (1908), because he has not threatened to enforce the disputed statute and does not have the ability to initiate enforcement of it. In my view – and apparently the majority's, see ante at 9 (indicating an injunction against Nixon "looks very much like" an impermissible injunction against the State of Missouri) – Nixon is correct. Under the Ex parte Young exception, the state official named as a party "must have some connection with the enforcement of the act, or else it is merely making [the official] a party as a representative of the state, and thereby attempting to make the state a party." 209 U.S. at 157. Moreover, the exception only applies against officials "who threaten and are about to commence proceedings, either of a civil or criminal nature, to enforce against parties affected an unconstitutional act, violating the Federal Constitution." Id. at 156.

In Children's Healthcare is a Legal Duty, Inc. v. Deters, 92 F.3d 1417 (6th Cir. 1996), a children's rights organization and a parent sued the Ohio Attorney General and certain local prosecutors. The plaintiffs challenged Ohio statutes which allowed a parent or guardian to treat a child's illness by spiritual means in accordance with religious beliefs without violating a duty owed to the child. Id. at 1413-14. The Ohio Attorney General moved to dismiss on the grounds the claim against her did not fall within the Ex parte Young exception. The district court denied the motion.

On appeal the Sixth Circuit reversed, stating "[t]he Attorney General did not threaten to commence and was not about to commence proceedings. . . . Moreover, Ohio law delegates the enforcement of the challenged statutes to local prosecutors, not the Attorney General. General Montgomery has no connection to the enforcement of the statutes." Id. at 1416-17 (internal citations omitted). The court

-10-

addressed Ex parte Young's requirement the state official have "some connection with the enforcement of the act," indicating such requirement "does not diminish the requirement that the official threaten and be about to commence proceedings." Id. at 1416. "General authority to enforce the law of the state is not sufficient to make government officials the proper parties to litigation challenging the law." Id. (quoting 1st Westco Corp. v. Sch. Dist. of Philadelphia, 6 F.3d 108, 113 (3d Cir. 1993)).

Similarly, in Okpalobi v. Foster, 244 F.3d 405 (5th Cir. 2001), providers of abortion services sued Louisiana's Governor and Attorney General to challenge a statute making abortion providers liable to patients in tort for any damage caused by an abortion. The district court enjoined the state from enforcing the law and the defendants appealed. On appeal, the court addressed whether the suit was barred by the Eleventh Amendment. The panel concluded the defendants fit within the Ex parte Young exception and upheld the injunction, but the Fifth Circuit granted rehearing en banc.

En banc, the Fifth Circuit noted Ex parte Young required the sued official to have "'some connection with the enforcement of the act' or to be 'specifically charged with the duty to enforce the statute' and be threatening to exercise that duty." Id. at 414-15 (quoting Ex parte Young, 209 U.S. at 157, 158). "[T]he Young principle teaches that it is not merely the general duty to see that the laws of the state are implemented that substantiates the required 'connection,' but the particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty." Id. at 416. After finding no particular duty set forth in the laws of the state specifically charging the Governor or Attorney General with enforcement of the challenged statute, or any action on the part of those defendants to enforce the statute, the en banc court concluded the defendants enjoyed Eleventh Amendment immunity. Id. at 424.

In this case, Attorney General Nixon is immune from suit under the Eleventh Amendment. Missouri law delegates to local prosecutors the responsibility of enforcing the statute. While the governor could ask Nixon to "aid a prosecuting attorney or circuit attorney" in the discharge of his or her duties, Mo. Rev. Stat. § 27.030, or a trial court could direct Nixon to sign indictments in lieu of a local prosecutor, id., or a local prosecutor could request Nixon's assistance, State v. Naylor, 40 S.W.2d 1079, 1085 (Mo. 1931), none of those events occurred here. Missouri law does not allow Nixon to initiate state action against the abortion providers. Nixon did not threaten and was not about to commence proceedings against the abortion providers, nor did he have the ability to do so.

Given the posture of this appeal, Nixon's immunity from suit necessarily raises concerns about our jurisdiction. While Reproductive Health sued two local prosecutors along with Nixon, only Nixon filed an appeal with our court. "Article III of the United States Constitution limits the jurisdiction of the federal courts to actual, ongoing cases and controversies." Ali v. Cangemi, 419 F.3d 722, 723 (8th Cir. 2005) (quoting Haden v. Pelofsky, 212 F.3d 466, 469 (8th Cir. 2000)). This court is required to address its Article III jurisdiction before addressing the merits. Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94-95 (1998). If Reproductive Health does not have an actual case or controversy with Nixon, it follows we do not have jurisdiction to address the merits of this appeal.

To establish a case or controversy between itself and Attorney General Nixon, Reproductive Health must show 1) it has suffered, or is about to suffer, an injury in fact, 2) a causal connection between the injury and the defendant's conduct, and 3) the real likelihood, as opposed to mere speculation, the injury will be redressed by a favorable decision. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). Attorney General Nixon's inability to enforce section 188.039 of the Missouri Revised Statutes is fatal. See Okpalobi, 244 F.3d at 426 ("The requirements of Lujan are entirely consistent with the long-standing rule that a plaintiff may not sue a state

official who is without any power to enforce the complained-of statute.").  Because Nixon is the only party who appealed the district court's order and there is no actual case or controversy between him and Reproductive Health, we lack jurisdiction to address the merits of this appeal.  Cf. id. at 429 (concluding the district court lacked Article III jurisdiction where the only parties sued lacked the ability to enforce the challenged statute).

For the reasons stated, I would first address the jurisdictional infirmities of this appeal.  Because our jurisdiction is lacking, I would dismiss the appeal without addressing the merits.  Therefore, I respectfully dissent.

_____