# United States Court of Appeals

## For the First Circuit

No. 05-2473

CARMEN RIVERA-FELICIANO; MARÍA FLORES-FELICIANO; MENDELSON
ORTIZ-NICOLAU; EDGARDO HERNÁNDEZ-ORTIZ; INÉS NAVEDO-VÁZQUEZ;
GILBERTO RIVERA-RODRÍGUEZ; JOSÉ J. RIVERA-ANEIRO; HÉCTOR L.
RIVERA-ORTIZ; WILGBERTO MARIO FELICIANO; CARLOS A.
ROSARIO-ADORNO; DOMINGO GONZALEZ-MARIE; ALEXIS ORTIZ-BERRÍOS;
ANGEL MARCANO-ORTIZ; PEDRO BELTRÁN-CARRASQUILLO; LUIS
MELÉNDEZ-RAMOS; and the class of all the inmates convicted of
murder that currently participate in the AOC Electronic
Surveillance Program,

Plaintiffs, Appellees,

v.

HON. ANÍBAL ACEVEDO-VILÁ, Governor of Puerto Rico;
HON. ROBERTO SÁNCHEZ-RAMOS, Secretary of Justice of Puerto Rico;
MIGUEL PEREIRA-CASTILLO, Secretary of Corrections and
Rehabilitation of Puerto Rico and Administrator of Corrections of
Puerto Rico; HON. JOSÉ R. LOZADA, Director of the Bureau of
Special Investigations of Puerto Rico,

Defendants, Appellants.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Juan M. Pérez-Giménez, U.S. District Judge]

Before

Torruella and Lynch, Circuit Judges,
and Lasker*, District Judge.

---

 * Of the Southern District of New York, sitting by
designation.

Salvador Antonetti-Stutts, Solicitor General of Puerto Rico, with whom Mariana D. Negrón-Vargas, Deputy Solicitor General, Maite D. Oronoz-Rodríguez, Deputy Solicitor General, and Doraliz E. Ortiz-De-León, Assistant Solicitor General, were on brief, for appellants.

Guillermo J. Ramos Luiña, with whom Carlos V. García Gutiérrez, Alejandra Bird López, Rafael E. Rodríguez Rivera, and Civil Action and Education Corporation were on brief, for appellees.

---

February 15, 2006

---

**LYNCH**, **Circuit Judge**.  In the 1970's inmates brought litigation alleging that conditions at the Puerto Rico prisons were unconstitutional; this resulted in a number of findings of constitutional violations and federal court remedial orders.  See generally Morales Feliciano v. Rullan, 378 F.3d 42 (1st Cir. 2004) (providing history of prior litigation).

In 1989, in response to overcrowding within the prison system, the Puerto Rico Administration of Corrections (AOC), through a "normative memorandum," established an Electronic Surveillance Program (ESP) under which certain inmates wearing electronic surveillance devices (anklets) were released from confinement in prison, but subject to supervision and strict rules. From the beginning of the program in 1989, inmates who had been convicted of murder were allowed by prison administrators to participate in the ESP.  The normative memorandum establishing the ESP in 1989 was formalized in 1994, when the AOC adopted Regulation No. 5065.  The AOC found the authority to implement these measures in the act creating the AOC, known as the "Organic Act."  See Organic Act of the Correctional Administration, P.R. Laws Ann. tit. 4, §§ 1101 et seq.

On May 26, 1995 the Commonwealth's legislature enacted Law No. 49, 1995 P.R. Laws 49, which, inter alia, stated that inmates convicted of murder were excluded from participation in the ESP.  Law No. 49 expressly authorized the AOC to establish and

supervise the ESP, and, in an amendment to the AOC's Organic Act, specified grounds for exclusion from the program. The specific exclusion involved here reads as follows:

> (a) Any convict who is serving a sentence for the following crimes:
> (1) Murder, rape, incest, sodomy or lewd and lascivious acts when the victim is under fourteen (14) years of age. . . .

P.R. Laws Ann. tit. 4, § 1136a. Law No. 49 also contained a grandfather clause allowing continuation in the ESP for all persons who were participating in the program as of the date of effectiveness of the Act, also May 26, 1995. Each of the inmate plaintiffs in this case committed the crime of murder before the effective date of Law No. 49 and began participation in the ESP after the effective date of Law No. 49, and so are not within the grandfather clause. It is very much disputed whether allowing the plaintiffs to participate in the ESP in the first place was permissible under Law No. 49.

Thereafter, a scene of regulatory hopscotch ensued about the interpretation of Law No. 49, with the primary question being characterized as one of retroactivity of the law: whether Law No. 49 could be applied to those who were convicted of a murder committed[1] prior to the effective date of the Act. Soon after Law

---

[1] The local regulations and the parties' briefs inconsistently refer to either the date of commission, the date of conviction, or the date of sentencing as the relevant date for retroactivity analysis. At oral argument, the Solicitor General of Puerto Rico emphasized that the relevant date is that of the commission of the

-3-

No. 49 was passed, the AOC took the position that the law would apply to all convicts. A number of inmates who had been convicted of murders committed before the effective date of Law No. 49 challenged the application of the law to them in the Puerto Rico courts. These courts held that Law No. 49 could not be applied retroactively to those who committed murder before the effective date of the Act. At least one court based its decision not only on the constitutional prohibition against ex post facto laws, but also on the separate "principle of retroactivity of the more benign criminal law," which is codified in the Penal Code of Puerto Rico.[2] See Sanabria-Morales v. Commonwealth, No. TD96-0258 (P.R. 1a Inst. Sept. 4, 1996). In another case before the Puerto Rico Court of Appeals, the Solicitor General of the Commonwealth admitted that

---

crime, and suggested that there may be plaintiffs in this suit who committed murder before May 26, 1995 but were convicted and sentenced afterward. We will treat the date of commission as the relevant date without deciding the issue.

[2] This statute provides:

> Criminal laws have no retroactive effect except when they favor the person charged with an offense.
> If the law in force at the time the offense was committed [was] different from that existing when passing judgment, the most lenient of the two shall always be applied.
> If during the sentence a more lenient law regarding the penalty or manner of execution is approved, the same shall be limited to what is established by that law.
> In the cases of the present section, the effects of the new statute shall operate as a matter of law.

P.R. Laws Ann. tit. 33, § 3004 (alteration in original).

-4-

the retroactive application of Law No. 49 would be unconstitutional. See Robles-Gonzales v. Caraballo-Torres, No. KLRA9600062 (P.R. Cir. Oct. 14, 1996). At least partially as a result of litigation, some inmates who had been convicted of murder before May 26, 1995 were admitted for the first time to the ESP after Law No. 49 was enacted.

The AOC, in response to that earlier litigation, issued an agency memorandum on August 15, 1996, indicating that Law No. 49 could not be applied retroactively to "any case sentenced prior to May 26, 1995." This was followed up on May 12, 1997 by another memorandum indicating that Law No. 49 could not be applied retroactively.

Then, on October 27, 1999, the AOC promulgated Regulation No. 6041, entitled "Regulation to Establish Procedures for the Electronic Surveillance Program," to comply with Law No. 49. These regulations expressly excluded from the ESP all persons convicted of first-degree murder, but did not exclude persons convicted of second-degree murder.

This prompted another round of lawsuits brought in Puerto Rico courts by inmates who had been convicted of murders committed prior to enactment of the Law No. 49, alleging constitutional and local law violations. In one case, the court ordered the AOC to consider the inmate for the ESP, finding that he otherwise met the eligibility requirements. See Martinez-Vargas v. Corrections

-5-

<u>Administration</u>, No. KAC 94-1278 (P.R. 1a Inst. Feb. 11, 1997). In another case involving one of the plaintiffs here, Mendelson Ortiz-Nicolau, the AOC entered a stipulation that Law No. 49 would only be applied prospectively, meaning that Ortiz could not be considered ineligible for the ESP based on his murder conviction. <u>See</u> <u>Ortiz-Nicolau</u> v. <u>Corrections Administration</u>, No. KPE99-2586 (P.R. 1a Inst. Nov. 8, 1999).

After these decisions and in an apparent attempt to avoid retroactivity concerns, the AOC implemented a policy which applied differential criteria depending on when the inmate committed the crime. In December 2000, two of the plaintiffs here, María Flores-Feliciano and Carmen Rivera-Feliciano, requested reconsideration by the AOC of its determination that they were not eligible for the ESP. In a legal opinion, the AOC recommended that their application be reconsidered based on application of the new policy. According to the district court, the policy "appeared [to cause] confusion within the AOC as to which Regulation and eligibility criteria would apply to each inmate requesting ESP privilege."

Then, on May 15, 2001, the AOC promulgated Administrative Order AC-2001-012, which was meant to clarify matters. It did exactly the opposite. It also provided for differential treatment of inmate eligibility, based on whether the inmate committed the crime before or after October 27, 1999, the date Regulation No. 6041 was adopted. It also was unclear on the applicability of Law

No. 49. On one hand, it provided that Law No. 49 was applicable to all persons who committed their crimes prior to October 27, 1999. On the other hand, it also suggested, through an application of the principle of the most benign rule from the Puerto Rico Penal Code, that Law No. 49 would not apply to persons convicted of crimes before the date of effectiveness, in direct contradiction to the statutory text (save for the grandfather clause).

A March 19, 2004 order, Administrative Order AC-2004-002, purported to correct the problem created by the May 15, 2001 order by expressly repealing it. Miguel Pereira-Castillo, who was appointed to the position of Secretary of Corrections and Rehabilitation and Administrator of Corrections in April 2003 and continues in that position today, testified that despite this repeal, he continued to admit murder convicts into the ESP. He explained that the reason he had done this was not because of ex post facto concerns, which he concluded were not a problem soon after taking office, but because of concerns related to Puerto Rico administrative law that had been communicated to him by an outside expert.

On May 4, 2004, the AOC adopted Regulation No. 6797, to formalize the March 19, 2004 order and govern the ESP going forward. The new regulation modified Regulation No. 6041 to refer to "murder" instead of "murder in the first degree." By this, it intended to close the loophole for second-degree murderers. It did

not expressly address any retroactivity issues. Nonetheless, the district court found that the regulation was still being applied only to those who had been convicted of murder after the effective date of Law No. 49. Indeed, the director of the ESP testified that one person convicted of murder prior to 1995 had been released in December 2004.

On January 2, 2005, a new administration took control of the Commonwealth's executive branch with the election of Aníbal Acevedo-Vilá as Governor. Acevedo-Vilá, along with Roberto Sánchez-Ramos, Secretary of Justice of the Commonwealth, José R. Lozada, Director of the Bureau of Special Investigations, and Pereira-Castillo, the aforementioned Secretary of Corrections and Rehabilitation and Administrator of Corrections, are the defendants in this case, sued in their official capacities.

In April of 2005, the defendants determined that the prior administration's interpretation of the regulations, as well as the positions the AOC had taken in litigation, were in error. They concluded that there was no retroactivity problem with applying Law No. 49 to those inmates presently in the ESP who had been convicted of murder committed before May 26, 1995 but who were subsequently admitted to the ESP. In the defendants' view, the "core substantive issue in this case is whether or not the Commonwealth of Puerto Rico has the authority to correct past administrative mistakes of law, when the result of those mistakes

was to allow several individual convicts to be released from jail under electronic supervision."

The defendants, in April 2005, managed to take back into custody and reincarcerate fourteen other individuals, none of whom are plaintiffs in the present action, who had been convicted of murder before the effective date of Law No. 49 and had been released into the ESP thereafter. These reimprisoned inmates immediately filed a habeas corpus petition in the courts of Puerto Rico, seeking release back into the ESP. As best we can tell from the record,[3] these petitioners have argued that their reincarceration violated the ex post facto prohibition and the due process clause under both the Constitution of the United States and the Constitution of Puerto Rico, as well as the "principle of . . . favorableness in the interpretation of statutes to the accused" in the Puerto Rico Penal Code, and also that the applicable regulations violated state administrative law.

That habeas case was brought under the name of <u>Gonzáles-Fuentes</u> v. <u>Commonwealth</u>. The Court of First Instance of Puerto Rico granted the habeas corpus petition, but on June 20, 2005, the decision was overruled by the Puerto Rico Court of Appeals. The petitioners appealed to the Puerto Rico Supreme Court, where their

---

[3] The defendants have provided a translated version of the appeal petition filed by the habeas petitioners in the Supreme Court of Puerto Rico, and we draw our understanding of the various issues in that case from this brief.

case has been briefed and is presently pending.  See Gonzáles-Fuentes v. Commonwealth, No. AC-25-48 (P.R. filed September 1, 2005).

Another Puerto Rican case was brought by inmates who had never been admitted into the ESP program, but had committed murder prior to May 26, 1995; they sought an injunction and a declaratory judgment that they were eligible for admission into the ESP.  See Rivera Morales v. Commonwealth, No. KPE2005-1075 (P.R. 1a Inst. Aug. 2, 2005).  The Puerto Rico Court of First Instance on August 2, 2005 entered a permanent injunction barring the AOC from applying Law No. 49 retroactively.  Id.  The court based its decision not only on ex post facto prohibitions in the federal and Puerto Rico constitutions, but also on interpretations of Puerto Rico administrative law.  It is unclear from the record and the briefs whether this case has been appealed.

On August 25, 2005, defendants announced their intention to "arrest" and immediately reincarcerate all participants in the ESP who had been convicted of murder, including the fifteen plaintiffs here.  This intention was not based on plaintiffs' infraction of any rules of the ESP, but on the new administration's broad reinterpretation that the plaintiffs had never been eligible for the ESP either under Law No. 49 or earlier.

-10-

After the announcement of August 25, the fifteen plaintiffs (and a purported class)[4] filed a complaint under 42 U.S.C. § 1983 on August 26, 2005 and sought a preliminary injunction and temporary restraining order.[5] The case was assigned to the same federal judge who had presided over the Puerto Rico prison reform litigation for more than 20 years. The district court entered an ex parte temporary restraining order (TRO) the same day. Three days later, the defendants moved to set aside the TRO; their motion was denied on August 31, 2005.

On September 1, 2005, the defendants filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and (6) and an opposition to the issuance of a preliminary injunction. The district court held an evidentiary hearing on September 2 and 5, 2005. In an opinion and order issued on September 7, 2005, the court denied the motion to dismiss, finding that abstention under Younger v. Harris, 401 U.S. 37 (1971), was inappropriate and that plaintiffs had stated a claim. The district court issued opinions and orders on September 5 and 20, 2005, explaining its injunction.

---

[4] These plaintiffs filed a motion for class certification which was initially allowed by the district court on September 7, 2005; on motion by defendants, the district court vacated that order on October 26, 2005.

[5] The defendants have not attacked plaintiffs' use of § 1983 to bring these claims, so we do not address the issue. See Wilkinson v. Dotson, 544 U.S. 74 (2005) (state prisoners' challenge to state parole procedures properly cognizable under § 1983).

The plaintiffs based their request for a preliminary injunction on two grounds: that reincarceration would violate their due process rights and the prohibition against ex post facto laws. The district court found that an injunction was warranted under both theories. It held that the plaintiffs had a liberty interest in continued participation in the program, for which they met all of the previously existing requirements. It also held that "application of Law 49 and the regulations at issue to plaintiffs is indeed ex post facto," and furthermore that "the effect of the Department of Corrections' new interpretation of Law 49 would be fatal to the plaintiffs inasmuch as the time they have been serving their sentence within the program would not be considered as time served for purposes of calculating their total years served." The terms of the preliminary injunction, set forth in the September 20 opinion and order, are as follows:

> [D]efendants, their attorneys, agents, employees or others acting in concert with them, and their successors are hereby enjoined from applying Law 49 of May 26, 1995, as well as Regulation No. 6041 of October 27, 1999, and Regulation No. 6797 of May 4, 2004, retroactively to plaintiffs and are enjoined from removing plaintiffs from the Electronic Surveillance Program, and re-incarcerating them in any institution under the jurisdiction of the Administration of Corrections.

This injunction is limited to the plaintiffs and does not on its face apply to others similarly situated to the plaintiffs.[6]

This case presents the Commonwealth defendants' appeal from the grant of that injunction. The defendants make a number of arguments,[7] which, in essence, amount to (1) an assertion that the district court acted prematurely and should have dismissed the action and/or abstained, either under the doctrine of Younger v. Harris, 401 U.S. 37, or some other abstention doctrine, and (2) assertions that the district court was wrong on the merits in finding any likelihood of success as to either ex post facto or due process violations.

---

[6] After this appeal was filed, the plaintiffs were granted permission to file an amended complaint on December 16, 2005. The amended complaint now lists ninety-four individuals, who are all claimed to be similarly situated to the original plaintiffs, i.e. they were convicted of murder prior to the enactment of Law No. 49 and were admitted into the ESP after the enactment of Law No. 49. We treat the preliminary injunction being appealed as only covering the original fifteen plaintiffs.

[7] Specifically, the defendants raised these arguments: (1) "[T]he district court lacks jurisdiction to hear the instant case pursuant to the Younger abstention doctrine, because the injunctive relief sought by Plaintiffs directly interferes with the quasi-judicial and administrative faculties of the AOC and related agencies." (2) "[T]he district court erred as a matter of law in denying the motion to dismiss for failure to state a claim upon which relief could be granted, with respect to Plaintiffs' claims under both the Ex Post Facto Clause and the Due Process Clause." (3) "[T]he district court abused its discretion in issuing the preliminary injunction against Defendants, because Plaintiffs failed to meet the requirements for a preliminary injunction, particularly in that they are unlikely to prevail on their claims under the Ex Post Facto or the Due Process Clauses."

Oral argument before this court was held on January 10, 2006. This court identified for the parties two separate possible liberty interests it saw as being at stake. The first concerned the possibility that the defendants' actions would result in a lengthening of an individual plaintiff's sentences of incarceration beyond their judicially pronounced term by failing to credit time served in the ESP. The second "liberty interest" had to do with the return of the plaintiffs from the ESP to imprisonment, even if there were no possibility of an extension of the duration of their sentences.

The first issue arose because plaintiffs had questioned whether the defendants intended to implement the law so as to deprive plaintiffs of credit for any period of time during which they had been in the ESP. Indeed, at the evidentiary hearing before the district court in this matter, the supervisor of the ESP, testifying on behalf of the defendants, said that was exactly the defendants' intention: that the plaintiffs' time in the ESP would not be credited toward their overall sentences. Such an interpretation of the statute would raise very serious ex post facto concerns under Lynce v. Mathis, 519 U.S. 433 (1997). See id. at 445-56 (state statute which retroactively cancelled early release credits with effect of increasing punishment of plaintiff

violates Ex Post Facto Clause). The district court relied on that testimony in part in issuing its injunction.

In its brief on appeal the Commonwealth defendants took a different position on crediting time. They articulated in a footnote the following:

> The only way that [sentences] could theoretically be increased if [plaintiffs] were reincarcerated would be if the AOC intended not to credit the time that Plaintiffs spent on supervised electronic release towards their sentence. Insofar as that might be a concern in this case, however, the AOC hereby expressly disavows any such intention; any one of the plaintiffs who participated in good faith in the program will be deemed to have been serving his or her sentence while on supervised release.

This court noted the express disavowal. It questioned the meaning of the reservation for "good faith" -- that there is no intent to fail to credit the sentence of individuals who complied with the rules of the program but there might be a question as to taking away credit for a person who did not participate in good faith. The Solicitor General of Puerto Rico, appearing with authority, represented to this court that it is not the intention of the defendants to refuse to give credit for the time served in the ESP to any individual returned to prison under their interpretation of Law No. 49. The Solicitor General represented that the defendants did wish to retain the discretion to return to imprisonment those who violated the terms of the ESP, but even in that situation the individuals would be credited with time served in the ESP.

We asked the Solicitor General of Puerto Rico whether, if that were indeed the position of the Commonwealth defendants, the defendants would agree to a permanent injunction, enjoining the defendants from refusing to give credit for time plaintiffs served in the ESP. He agreed. Accordingly, on remand we direct the district court to enter such a permanent injunction, after giving the parties the opportunity to craft appropriate proposed language.

What remains in the analysis of the preliminary injunction is the question of whether individual plaintiffs convicted of murder who are participating in the ESP have remaining cognizable ex post facto or due process interests in not being reincarcerated, provided they have followed the rules of the ESP.

With respect to this question, the district court began with its impression that the defendants were "deliberately ignoring valid state court judgments and administrative opinions." The district court found that the defendants' new interpretations ran contrary to the ex post facto prohibitions, in that it "appl[ied] a law to events that occurred before its enactment and that said application disadvantages the . . . persons affected by it." The district court found that the present case was similar to the Supreme Court's decision in Lynce v. Mathis. In Lynce, the Court held that a Florida statute that was intended to prevent the early release of prisoners violated the Ex Post Facto Clause where the statute retroactively cancelled early release credits that had been

awarded to the prisoner, thereby resulting in his rearrest and reincarceration. 519 U.S. at 445-46.

The defendants, in turn, argue that the present case is more akin to this court's decision in Dominique v. Weld, 73 F.3d 1156 (1st Cir. 1996), which rejected an ex post facto challenge to an inmate's removal from a work release program, see id. at 1163, and the Supreme Court's decision in California Department of Corrections v. Morales, 514 U.S. 499 (1995), which rejected an ex post facto challenge to a statute allowing a parole board to decrease frequency of parole suitability hearings under certain circumstances, see id. at 501-02.

The district court also found that there was a violation of plaintiffs' procedural due process rights. Relying on Morrissey v. Brewer, 408 U.S. 471, 482 (1972), in which the Court set out the due process requirements for parole revocation hearings, the district court found that "the plaintiffs have an interest in their continued liberty" and "cannot be deprived of their legally acquired privilege unless they have breached their agreement with the AOC" or unless due process is afforded. In particular, the district court relied on the following passage from Morrissey to find a cognizable liberty interest: "[T]he liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty, and its termination inflicts a 'grievous loss' on the parolee and often on others. . . . By whatever name,

the liberty is valuable and must be seen as within the protection of the Fourteenth Amendment."  Id. at 482.

The defendants argue that the plaintiffs have no liberty interest in continued participation in the program, citing, inter alia, Greenholtz v. Inmates of Nebraska Penal & Correctional Complex, 442 U.S. 1 (1979).  See id. at 11 (rejecting procedural due process challenges to state parole release hearings).

## II.

### Abstention

In its September 7, 2005 order denying the motion to dismiss pursuant to Younger v. Harris,[8] the district court noted that the Commonwealth had withdrawn its earlier request for abstention under Railroad Commission of Texas v. Pullman Co., 312 U.S. 496 (1941), and so the court limited its consideration to abstention under Younger.

---

[8] The defendants' Younger defense attempts to characterize this case as though there would be an individualized determination on reimprisonment as to each federal plaintiff.  But as both we and the district court understand it, there is no individualized determination to be made.  Plaintiffs have been bureaucratically reclassified, and reimprisonment will be automatic.  We note that this fact has implications (unfavorable to the plaintiffs) on the procedural due process claims.

The defendants also liken this situation to a criminal prosecution, but the analogy is not apt.  This is a reclassification by prison officials of eligibility for particular penal programs.  That the defendants for their own purposes chose to execute what they called "arrest" warrants does not change the essential nature of their actions.  These plaintiffs were already under the custody of the AOC, although out on supervised release.

-18-

The district court rejected the defendants' <u>Younger</u> argument. It noted that "[s]ince no state judicial or administrative proceeding has yet begun in this case, it is more than evident that <u>Younger</u> does not come into play." The court also noted that the federal case would not interfere with the <u>Gonzáles-Fuentes</u> case in the Puerto Rico courts, since the putative class definition in the federal court action excluded the state habeas petitioners. The difference was that the state habeas petitioners had been reincarcerated, while the plaintiffs in the federal case were still on release. On that basis, the district court proceeded no further in its analysis of whether to stay the federal action in deference to the state action. Since then, the district court has ruled that the class action requirements were not met, thus undercutting one of its reasons for not considering such a deferral. But the court did not revisit the question of abstaining in order to provide such deference, nor was it asked to do so.[9]

The plaintiffs correctly observe that there is usually no interlocutory appeal from denials of a motion to dismiss, at least when such an appeal stands alone.[10]  See <u>Gulfstream Aerospace Corp.</u>

---

[9] We do not know how the district court would have ruled had the sequencing of the case been different.

[10] There are a few exceptions, as in certain issues of qualified immunity. See <u>Olmeda</u> v. <u>Ortiz Quinonez</u>, No. 04-2596, 2006 WL 61055 (1st Cir. Jan. 12, 2006). There is no need to decide whether there are special rules in <u>Younger</u> cases, as we go on to order abstention on other grounds.

v. Mayacamas Corp., 485 U.S. 271, 278 (1998) (holding that an order denying a motion to stay or dismiss proceedings under Colorado River Water Conservation District v. United States, 424 U.S. 800 (1976), was not immediately appealable). But this is a bit misleading. There is no dispute that this court has appellate jurisdiction over appeals from grants of preliminary injunctions. See 28 U.S.C. § 1292(a)(1); Rio Grande Cmty. Health Ctr. v. Rullan, 397 F.3d 56, 67 (1st Cir. 2005). On the facts here, abstention analysis may well be pertinent to the probability of success prong of the preliminary injunction analysis. The issue of abstention may be reviewed on interlocutory appeal in situations where the district court's decision whether to grant a preliminary injunction of necessity implicates abstention concerns. See Rio Grande Cmty. Health Ctr., 397 F.3d at 67-72 (reviewing, on interlocutory appeal of denial of preliminary injunction, a district court's refusal to abstain); see also Pathways, Inc. v. Dunne, 329 F.3d 108, 113 (2d Cir. 2003).

While defendants raised and the district court denied abstention only on Younger grounds, this court maintains the ability to order abstention sua sponte. See Cruz v. Melecio, 204 F.3d 14, 22 n.7 (1st Cir. 2000); see also Bellotti v. Baird, 428 U.S. 132, 143 n.10 (1976) ("[I]t would appear that abstention may be raised by the court [s]ua sponte."). Thus, we are free to determine whether principles of abstention, stemming from Younger

and its progeny or from other abstention doctrines, would require a stay of the action here.

The Supreme Court has identified a number of discrete abstention doctrines. See Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 716-17 (1996). We have acknowledged that "the categories do matter," Rio Grande Cmty. Health Ctr., 397 F.3d at 68, but also that the "varieties are not 'rigid pigeonholes into which federal courts must try to fit cases,'" id. (quoting Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 11 n.9 (1987)).  In this case, two abstention doctrines, both Pullman abstention and Colorado River abstention, militate for a stay of proceedings while the parallel state proceedings run their course.

There are three strong themes that lead us to conclude that abstention is appropriate in this case.  The first is that there are a number of unresolved issues of Puerto Rico administrative and statutory law which would inevitably shape the nature of the federal claims. As cases applying Pullman have held, resolution of these questions "might render moot, or present in a different posture, the federal constitutional issues." Catrone v. Mass. State Racing Comm'n, 535 F.2d 669, 671 (1st Cir. 1976).

One such question involves the effect of a number of older Puerto Rico court decisions, dating from before the current administration, which have held that retroactive application of Law

-21-

No. 49 violates the Ex Post Facto or the Due Process Clauses.[11] Plaintiffs point out that in two earlier cases in the Puerto Rico courts, one from the Court of First Instance and one from the Court of Appeals, the Commonwealth stipulated that Law No. 49 does not apply retroactively.

The plaintiffs argue that, under Puerto Rico law, these prior judgments should be entitled to res judicata effect and that the government would be precluded from relitigating these issues. At least one of the plaintiffs here was a plaintiff in one of these prior cases, and was the beneficiary of a stipulation from the AOC that Law No. 49 only applied prospectively. As for the other plaintiffs, who may not have been parties to such prior litigation, the plaintiffs argue that it would not "be reasonable to allow the [AOC] to apply different standards to similarly situated individuals depending on whether they had already sued the government or not." This argument is essentially that they have a reliance interest in the AOC's prior stipulations, which were made in suits on the retroactivity of Law No. 49 brought by individuals similarly situated to the plaintiffs, and that the AOC should be bound to these stipulations. There are questions regarding whether Puerto Rico law would recognize such reliance interests in these plaintiffs. It would appear that at least one of the petitioners

---

[11] It is not clear whether these suits were brought under the U.S. Constitution, the Puerto Rico Constitution, or both.

in the Gonzáles-Fuentes case had been part of prior litigation, and so it is very likely that the Puerto Rico Supreme Court will face this issue.

Another local law question involves the defendants' argument that the regulations implementing the ESP prior to 1995 were ultra vires as a matter of state administrative law. First, they argue that the initial 1989 regulation "was not adopted by means of notice and comment rulemaking required by the Uniform Administrative Procedures Act of Puerto Rico." They also argue that both the 1989 regulation and Regulation No. 5065, passed in 1994, exceeded the powers delegated to the AOC. They posit that the "authority to create an electronic surveillance program" was not granted to the AOC until the passage of Law No. 49.

The plaintiffs respond that the program was in fact a proper exercise of the AOC's powers under the AOC's Organic Act. P.R. Laws Ann. tit. 4, § 1112 (authorizing the AOC to "[u]se the method of rehabilitation . . . which may include, among others, work, study, or treatment programs when this is compatible with the public safety" and to "formulate . . . the internal regulations needed for the diagnosis, classification, treatment and rehabilitation of the inmates"). These questions of local administrative law are also before the Puerto Rico Supreme Court.

There is also the question of whether the present administration has the authority to countermand the legal

interpretations put forth by the prior administrations, absent some express grant of authority from the legislature. Assuming this administration has some authority to do so, there are yet other questions that directly address the merits of the claims raised by the defendants' reinterpretation. These include whether Law No. 49, as a matter of statutory interpretation, applies to convicts who committed their crimes prior to its passage; whether the Puerto Rico Penal Code's "principle of the most benign criminal law" applies; and whether the AOC had the initial authority to release prisoners in seeming contravention to the legislative authorization in Law No. 49. This list by no means covers all the subsidiary questions of Puerto Rico law.

It would be unusual for a federal court, in order to reach issues of federal constitutional law, to resolve such numerous prior questions of local law absent prior interpretations by the local courts of these local law issues. Under the Pullman abstention doctrine, "when a federal constitutional claim is premised on an unsettled question of state law, the federal court should stay its hand in order to provide the state courts an opportunity to settle the underlying state law question and thus avoid the possibility of unnecessarily deciding a constitutional question." Harris County Comm'rs Court v. Moore, 420 U.S. 77, 83 (1975). The Supreme Court has instructed:

> Warnings against premature adjudication of constitutional questions bear heightened

> attention when a federal court is asked to invalidate a State's law, for the federal tribunal risks friction generating error when it endeavors to construe a novel state Act not yet reviewed by the State's highest court.

Arizonans for Official English v. Arizona, 520 U.S. 43, 79 (1997). Where the highest court of the jurisdiction involved has the case pending before it, "once that court has spoken, adjudication of any remaining constitutional questions may indeed become greatly simplified." Id. at 80.

The second concern is that arguments virtually identical to those presented here had been presented to the courts of Puerto Rico even before this suit was filed, and these are now pending before the Supreme Court of Puerto Rico. Under Pullman, the fact that a state proceeding is actually pending strengthens the case for abstention. "Where there is an action pending in state court that will likely resolve the state-law questions underlying the federal claim [the Supreme Court has] regularly ordered abstention." Harris County Comm'rs Court, 420 U.S. at 83; see also Romany v. Colegio de Abogados, 742 F.2d 32, 42 (1st Cir. 1989) ("The argument for abstention is . . . strengthened by several special factors. First, as noted, a state proceeding is already in being.")

The same holds under the Colorado River abstention doctrine, which is specifically concerned with federal court abstention when there are pending related state proceedings. See

*Colorado River*, 424 U.S. at 818-19. For many of the same reasons we articulated in *Currie* v. *Group Insurance Commission*, 290 F.3d 1 (1st Cir. 2002) and which underlie the *Colorado River* stay doctrine, we believe it appropriate for the district court to stay further proceedings out of deference to the Puerto Rico courts. As *Currie* stated:

> This court has identified six factors based on the Supreme Court's decision in *Colorado River* and its subsequent decision in *Moses H. Cone Memorial Hospital* v. *Mercury Construction Corp.*, 460 U.S. 1 (1983): "(1) whether either court has assumed jurisdiction over a res; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether federal law or state law controls; and (6) whether the state forum will adequately protect the interests of the parties."

*Id.* at 10 (quoting *Rivera-Puig* v. *Garcia-Rosario*, 983 F.2d 311, 320-21 (1st Cir. 1992)). "No one factor is meant to be determinative, but rather courts must make a 'carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counselling against that exercise.'" *Rio Grande Cmty. Health Ctr.*, 397 F.3d at 72 (quoting *Colorado River*, 424 U.S. at 818).

Applying the factors here, no res is involved and both the federal and Puerto Rico forums are equally convenient. The other four factors all tilt the analysis toward abstention. The Puerto Rico courts first obtained jurisdiction; in light of the

-26-

many underlying unresolved issues of Puerto Rican law it would be better to avoid piecemeal litigation and to have the Puerto Rico courts decide those controlling issues of Puerto Rico law first; and there is no reason to think the courts of Puerto Rico cannot protect the plaintiffs' rights. As in Currie, a ruling from the Puerto Rico courts that the new regulation and interpretations violate Puerto Rico law would render our opinion merely advisory. See 290 F.3d at 11. And so long as the preliminary injunction remains in place, plaintiffs cannot be harmed by a stay. Nor does this result surrender federal jurisdiction -- it only stays it. See Rivera-Puig, 983 F.2d at 322.

"Until the Supreme Court of Puerto Rico acts . . . , the dimension of the constitutional issue for federal adjudication will remain unsettled. For that reason alone, there is good reason for the federal court to stay its hand while retaining jurisdiction." Romany, 742 F.2d at 42.

The plaintiffs posit that abstention is inappropriate because they are in a different category from the habeas petitioners before the Puerto Rico Supreme Court. They argue that although both groups comprise plaintiffs who committed murder before the effective date of Law No. 49 and were put into the ESP after that date, unlike the state habeas petitioners they have not yet been reincarcerated. While true, this argument is irrelevant. The very same legal issues presented to the federal court were

presented to the courts of the Commonwealth before the federal case was filed. That plaintiffs here are different from the petitioners there, while a factor, does not in this case reduce the concerns underlying abstention doctrine.

The third concern is that the plaintiffs in the state action have not, as best as we can tell from the record, filed a reservation under England v. Louisiana State Board of Medical Examiners, 375 U.S. 411 (1964). In England, the Court held that "if a party freely and without reservation submits his federal claims for decision by the state courts, litigates them there, and has them decided there, then -- whether or not he seeks direct review of the state decision in this Court -- he has elected to forgo his right to return to the District Court." Id. at 419. This court has held that such a reservation allows "a form of abstention that permits the federal court, in effect, to ask a state court to clarify a murky question of state law involved in the case, while permitting the plaintiff to return to the federal forum for determination of the federal question after the state court has decided the issue of state law." Duty Free Shop, Inc. v. Administracion de Terrenos, 889 F.2d 1181, 1183 (1st Cir. 1989).

**III.**

Preliminary Injunction

To say there should be abstention does not resolve the question about whether to leave the preliminary injunction in

place, in whole or in part, pending the decision from the Supreme Court of Puerto Rico.  See Harrison v. NAACP, 360 U.S. 167, 178-79 (1959) ("[T]he District Court of course possesses ample authority in this action, or in such supplemental proceedings as may be initiated, to protect the appellees while [the state case] goes forward."); see also Catrone, 535 F.2d at 672 (authorizing district court to issue preliminary injunction after deciding district court should abstain).

Appellate review of an issuance of a preliminary injunction is for abuse of discretion.  See Rio Grande Cmty. Health. Ctr., 397 F.3d at 75.  Errors of law constitute an abuse of discretion.  See McClure v. Galvin, 386 F.3d 36, 41 (1st Cir. 2004).  Like the district court, we analyze the four criteria for preliminary injunction relief: "1) a likelihood of success on the merits, 2) irreparable harm to the plaintiff should preliminary relief not be granted, 3) whether the harm to the defendant from granting the preliminary relief exceeds the harm to the plaintiff from denying it, and 4) the effect of the preliminary injunction on the public interest." Rio Grande Cmty. Health Ctr., 397 F.3d at 75.

The conclusion that abstention is appropriate here leaves a federal court in an awkward position as to the criteria for preliminary injunctive relief. Ordinarily, this court would engage in a more extensive analysis of the legal merits of plaintiffs'

claims under the criterion of the plaintiffs' probability of success on the merits. But we have no wish to address issues that may be resolved by the Supreme Court of Puerto Rico. And it is defendants, who press the lack of probability of success argument, who also seek abstention. As the Eighth Circuit has noted when faced with a similar conundrum:

> This issue is analytically perplexing -- how is the abstaining federal court to measure plaintiffs' likelihood of success when it has delayed addressing the merits until the state courts construe the challenged statute? The federal court must avoid usurping the state courts' prerogative under Pullman by granting or denying a preliminary injunction based upon a construction urged by one of the parties.

Reprod. Health Servs. of Planned Parenthood of St. Louis Region, Inc. v. Nixon, 428 F.3d 1139, 1144 (8th Cir. 2005).

This court has faced this problem before, in Catrone v. Mass. State Racing Commission, 535 F.2d 669. In Catrone, a horse trainer brought a civil rights action against the racing commission seeking a permanent injunction compelling the commission to admit him to its racetrack. Id. at 670. The district court granted the permanent injunction. Id. We ruled that the district court should have abstained in adjudicating as a final matter the constitutional claims until the Massachusetts courts could adjudicate the plaintiff's rights under state law. Id. at 671. Nonetheless, we authorized the district court on remand to issue a preliminary injunction to allow the plaintiff to enter the race track. Id. at

-30-

672. We were "careful to refrain from passing in any final sense on the merits of Catrone's federal claims" and instead based our decision on "considerations of equity and fairness." Id.

On balance, with some modification to the injunction, we think that the Commonwealth defendants have not made a sufficient case of abuse of discretion to warrant vacating the injunction. First, as we have noted, this case involves shifting positions by the Commonwealth officials, not only over time, but by these defendants within the span of this case as to their meaning of their position and their enforcement intentions. Under these circumstances, it is better to freeze the matter and not have the target of analysis shift again.

Second, it is difficult to evaluate the question of the probability of success on the merits in the absence of further definition of the nature of the problem, which turns on an initial question under Puerto Rico law.[12] The plaintiffs' preference would be for the federal courts not to abstain. The Commonwealth defendants' preference is not to have any injunctive relief. Under these circumstances, a balance of interests is preserved.

As to the public interest, we order the injunction be modified so that it is clear that anyone among the plaintiffs who violates the terms of release and supervision under the ESP may

_____

[12] The parties at oral argument told us that they were willing to attempt to negotiate some form of injunction pending abstention. Unfortunately, they were unsuccessful.

suffer the usual detriments from such violations. While the notion of murderers being released to the community may strike some as startling, it was the judgment of the AOC for over a fifteen-year period that this program posed no unacceptable risk to the public. To the extent that there are violations of the rules of the program, those inmates may be returned to custody.

We remand the matter to the district court with instructions to revise the preliminary injunction in the one respect noted herein and to enter a permanent injunction as described. On remand, the district court should also address the question of whether the preliminary injunction should cover the plaintiffs added by the amended complaint filed after notice of appeal. The district court is to abstain from taking further action in this matter pending resolution of Gonzáles-Fuentes v. Commonwealth before the Puerto Rico Supreme Court and to stay all further proceedings. No costs of appeal are awarded. So ordered.