MURPHY, Circuit Judge.
Planned Parenthood of Minnesota, North Dakota, South Dakota and its medical director Dr. Carol E. Ball (collectively Planned Parenthood) brought this action under the First and Fourteenth Amendments against Governor Mike Rounds and Attorney General Larry Long (state officials) to enjoin enforcement of measures enacted in 2005 revising the South Dakota law on informed consent to abortion. The *719 district court[1] granted a preliminary injunction enjoining the new law from going into effect, and the state officials appeal.[2] Because we conclude that the plaintiffs showed a likelihood of prevailing on their constitutional arguments and that the district court did not abuse its discretion in granting injunctive relief at this preliminary stage of the proceedings, we affirm.
I.
In 1993 South Dakota enacted a law providing that no abortion can be performed without the patient’s voluntary and informed consent unless it is impossible to obtain such consent due to a medical emergency. S.D.C.L. § 34-23A-10.1 (2003). Under this statute, the patient’s consent will be informed only if certain information has been given to her at least 24 hours before an abortion procedure. The information required by the 1993 law includes the name of the physician who will perform the abortion, the medical risks associated with abortion and with carrying her child to term, and the probable gestational age of the embryo or fetus she is carrying. The patient must also have been told that medical assistance benefits may be available, that the father may be liable for support if she has her child, and that she has the right to view complimentary printed materials with pictures and drawings of embryos and fetuses at various gestational ages. Id. After the patient has received all of this information, she must sign an informed consent certification. Id. A provider’s failure to comply with the state’s informed consent requirements is a class 2 misdemeanor. S.D.C.L. § 34-23A-10.2 (2005).[3] We upheld the constitutionality of this 1993 law in Planned Parenthood, Sioux Falls Clinic v. Miller, 63 F.3d 1452, 1467 (8th Cir.1995).
In 2005 South Dakota enacted House Bill 1166 (the Act) which is the subject of this action. The Act amended the 1993 version of § 33-23A-10.1 and expanded the disclosure requirements for informed consent to abortion. The disclosures required under the new law are contained in § 7 of the Act. Under § 7, a woman contemplating abortion must receive oral disclosures from the physician scheduled to perform the abortion or a designee 24 hours in advance of the procedure and other written disclosures must be given by the physician no less than 2 hours before the procedure. The mandatory disclosures include all of the information required under the prior law as well as the new provisions.
As part of the new disclosures required under § 7, the doctor’s written statement provided 2 hours before an abortion must inform the patient:
(b) That the abortion will terminate the life of a whole, separate, unique, living human being;
(c) That [the patient] has an existing relationship with that unborn human being and that the relationship enjoys protection under the United States Constitution and under the laws of South Dakota;
(d) That by having an abortion, her existing relationship and her existing con *720 stitutional rights with regards to that relationship will be terminated....
S.D.C.L. § 34-23A-l0.1 (1)(b) — (d)(2005). Section 8 of the Act defines “human being” as an “individual living member of the species Homo sapiens.” Although this definition is not part of the written statements required by § 7, the state officials suggest that a physician could choose to include it.
Other new disclosures mandated by § 7 of the Act include more specific information about the psychological risks of abortion, including depression, suicide, and suicidal ideation, to be given as part of the written statements 2 hours before the procedure. See S.D.C.L. § 34-23A-10.1(l)(e) (2005). The name, address, and telephone number of a nearby crisis pregnancy center must also be provided with the other oral disclosures 24 hours in advance. After the patient has read the written portion of the required disclosures, § 7 requires that she sign each page of the statement verifying that she has understood all the disclosures. S.D.C.L. § 34-23A10.1(1) ¶ 2 (2005). If she asks for clarification or explanation about any required disclosure or has any other significant question, the physician’s response must also be in writing. Id. That response becomes part of the patient’s permanent medical record. Once all of the required disclosures have been provided, § 7 requires that the physician certify that she is satisfied that the patient “understands the information imparted.” S.D.C.L. § 34-23A-10.K2) (2005).
Section 10 of the 2005 Act provides that the 1993 informed consent requirements shall remain in effect if the provisions of § 7 are enjoined, suspended, or delayed. Section 11 provides that if any part of § 7 is found unconstitutional, it shall be severed from the remaining valid provisions of the Act.
Before the Act was to go into effect on July 1, 2005, Planned Parenthood brought this action and moved for a preliminary injunction. Planned Parenthood argued that requiring physicians to state in writing to their patients that abortion “terminates the life of a whole, separate, unique, living human being” violates the First and Fourteenth Amendment rights of both doctors and women, as do the two related required written statements about the patient’s “existing relationship” with that unborn human being and the potential termination of that relationship. Planned Parenthood argued that the constitutional injuries were reinforced by the physician’s obligation to certify that the patient has not only received these messages but also understood them.[4] In its opposition to the motion, the state officials characterized these three challenged disclosures as statements of medical and scientific fact which are necessary to give complete and accurate information to women contemplating abortion.
The district court evaluated the request for injunctive relief under the four Dataphase factors: 1) the probability of success on the merits; 2) the threat of irreparable harm to the movant; 3) the balance between this harm and the injury which will result from granting the injunction; and 4) whether issuance of the injunction was in the public interest. Dataphase Sys., Inc. v. C L Sys. Inc., 640 F.2d 109, 114 (8th Cir.1981) (en banc).
*721 The district court found that the challenged disclosures express the state’s ideology on an “unsettled medical, philosophical, theological, and scientific issue.” Planned Parenthood of South Dakota v. Rounds, 375 F.Supp.2d 881, 887 (D.S.D. 2005) (citing Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973)). The court concluded that the requirement that physicians give these messages likely violates their First Amendment rights against compelled speech and that Planned Parenthood had shown that it was likely to succeed on the merits. The court further determined that Planned Parenthood had demonstrated a threat of irreparable harm and that the balance of the harms and the public interest were also in its favor. It accordingly granted preliminary injunctive relief, enjoining the new provisions in § 7 of the Act but providing that the prior informed consent law remain in effect during the pendency of the preliminary injunction pursuant to § 10 of the Act.
II.
On appeal the state officials and the intervenors (collectively South Dakota) argue that the district court erred in granting preliminary injunctive relief and alternatively that the court should have enjoined only those provisions of § 7 which it specifically found likely to be constitutionally infirm. We review a decision to grant preliminary injunctive relief with the assistance of the Dataphase factors, United Indus. Corp. v. Clorox Co., 140 F.3d 1175, 1178-79 (8th Cir.1998). We will reverse if there was an abuse of discretion. Coca-Cola Co. v. Purdy, 382 F.3d 774, 782 (8th Cir.2004). An abuse of discretion occurs if the decision of the district court is based on clearly erroneous factual findings or erroneous legal conclusions. Lankford v. Sherman, 451 F.3d 496, 503-04 (8th Cir.2006).
A.
The best starting point for our Da-taphase analysis is consideration of the plaintiffs’ likelihood of success on the merits. Cf. Clorox, 140 F.3d at 1179. This test is not one of mathematical probability, but rather a question of whether Planned Parenthood has a “fair chance of prevailing” after discovery and a full trial. Heartland Acad. Cmty. Church v. Waddle, 335 F.3d 684, 690 (8th Cir.2003). We will uphold a preliminary injunction “if the underlying constitutional issue is close.” Planned Parenthood of the St. Louis Region, Inc. v. Nixon, 428 F.3d 1139, 1145 (8th Cir.2005) (internal quotations omitted).
Statutes regulating informed consent to abortion can implicate both a woman’s fundamental due process right to have access to the procedure free from any undue burden as well as her doctor’s First Amendment right against compelled speech. Planned Parenthood of Southeastern Pennsylvania v. Casey, 505 U.S. 833, 881-84, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992) (plurality opinion). South Dakota argues that the preliminary injunction was based on erroneous legal premises. Its primary contention is that the challenged disclosures are statements of medical and scientific fact, making the requirement that physicians give them consistent with Casey and the Supreme Court’s compelled speech cases. Planned Parenthood responds that the district court correctly determined that the disclosures are not factual or scientific, but ideological in nature, and that the requirement that physicians give these written statements likely violates the First Amendment.
The right to free speech encompasses both the right to speak or write freely and the right not to do so under some circumstances. Wooley v. Maynard, 430 U.S. 705, 714, 97 S.Ct. 1428, 51 *722 L.Ed.2d 752 (1977). To determine whether a particular speech requirement violates the right to refrain from speaking, a court must determine whether the requirement implicates First Amendment protections, id. at 714-15, 97 S.Ct. 1428, and if it does, whether it is narrowly tailored to further a compelling state interest. Id. at 715-16, 97 S.Ct. 1428; Pac. Gas & Elec. Co. v. Pub. Utils. Comm’n of Cal., 475 U.S. 1, 19, 106 S.Ct. 903, 89 L.Ed.2d 1 (1986) (plurality opinion).
Governmentally compelled expression is particularly problematic when a speaker is required by the state to impart a political or ideological message contrary to the individual’s own views. Cf. Nixon v. Shrink Mo. Gov’t PAC, 528 U.S. 377, 410-11, 120 S.Ct. 897, 145 L.Ed.2d 886 (2000) (Thomas, J., dissenting) (finding it is “unassailable” that “[pjolitical speech is the primary object of First Amendment protection.”); Riley v. Nat’l Fed’n of the Blind, 487 U.S. 781, 797, 108 S.Ct. 2667, 101 L.Ed.2d 669 (1988) (treating compelled speech and compelled silence as constitutionally equivalent). The Court determined in Wooley that a law prohibiting New Hampshire residents from covering up the license plate motto “Live Free or Die” forced those who objected to the message to use their cars as “mobile billboards” for the state’s viewpoint. 430 U.S. at 715, 97 S.Ct. 1428. The state’s proffered justifications — public safety and the preservation of communal values — were not sufficiently compelling to justify the regulation. Id. at 715-17, 97 S.Ct. 1428. The Court reached a similar result in Pacific Gas, where a California administrative order required a utility company to disseminate a hostile consumer newsletter with its billing statements. 475 U.S. at 12-18, 106 S.Ct. 903. Although the state’s interest in fair and effective utility regulation may have been compelling, the Court concluded that it had other regulatory alternatives which would not have violated the First Amendment. Id. at 19-20, 106 S.Ct. 903.
The Casey Court did not except informed consent to abortion statutes from normal First Amendment compelled speech protections, see 505 U.S. at 884, 112 S.Ct. 2791, but it did resolve the constitutional balance of interests somewhat differently for state laws requiring disclosure of truthful, nonmisleading factual information to women contemplating abortion than in its balancing in Wooley and Pacific Gas. See 505 U.S. at 882, 112 S.Ct. 2791. The Court concluded that the Constitution permits “information about the nature of the procedure, the attendant health risks and those of childbirth, and the ‘probable gestational age’ of the fetus.” Id. Although disclosure requirements may implicate serious moral and political issues for physicians, they are permissible under the First Amendment if they are part of the state’s “reasonable licensing and regulation” of the practice of medicine. Id. at 884, 112 S.Ct. 2791. Under Casey, South Dakota may require that prolife messages be made available to women who want to receive them, just as it could require pro-choice messages if it wished. See id. at 882-83, 112 S.Ct. 2791. Since the law at issue in Casey required doctors only to disclose the fact that printed materials were available rather than requiring them to deliver ideological messages themselves, the Court did not need to confront Justice O’Connor’s concern in City of Akron v. Akron Ctr. for Reprod. Health, Inc., 462 U.S. 416, 103 S.Ct. 2481, 76 L.Ed.2d 687 (1983), that “informed consent provisions may ... violate the First Amendment rights of the physician if the State requires him or her to communicate its ideology.” See id. at 472 n. 16, 103 S.Ct. 2481 (O’Connor, J., dissenting) (citing Wooley, 430 U.S. at 705, 97 S.Ct. 1428). In no case has the Court extended the bounds of permissible *723 regulation to laws which force unwilling speakers themselves to express a particular ideological viewpoint about abortion.
South Dakota argues that the challenged disclosures are not ideological, but are supported by an objective scientific and medical consensus because of the Act’s definition of a “human being” in § 8, as a “living member of the species Homo sapiens.” Although that may be one definition, the term human being is also likely to have much broader meaning for both physicians and patients. See e.g., NTC’s Compact English Dictionary 220 (2000) (“human being n. a person; a human creature”); The American Heritage Student Dictionary 720 (1994) (“human being n. A person; a woman, man, or child”). South Dakota cites no persuasive authority which supports its theory that the district court was bound by the legislature’s definition of human being. Under Casey’s teaching, the district court was required to make a preliminary determination about the objective scientific and medical accuracy of the statements in the required disclosures. 505 U.S. at 882, 884, 112 S.Ct. 2791. This inquiry would be foreclosed if the legislature had the right to define the most important term in any way it desired, no matter how misleading. Had the legislature wished to inform women contemplating abortion that a human fetus or embryo is a member of the species Homo sapiens, it could have drafted § 7 accordingly instead of referring to a “whole, separate, unique, living human being.” S.D.C.L. § 34-23A-10.1(l)(b). It did not do so, however, and our task is to evaluate the message South Dakota would actually compel doctors to give in the disclosures.
The district court’s assessment that the challenged disclosures express a value judgment rather than medical facts has evidentiary support in the record. Planned Parenthood submitted declarations by Dr. Carol Ball, the other named plaintiff, who averred that the challenged disclosures contain statements of “ideology and opinion, not medicine and fact,” and by Dr. Paul Root Wolpe, a University of Pennsylvania bioethicist, who stated that the disclosures were supported by “no scientific or medical consensus.” South Dakota alleges deficiencies in each declaration, including the affiliation of both declarants with Planned Parenthood and the fact that Wolpe is a bioethicist rather than a medical doctor. At this preliminary stage, however, we review factual determinations based on the record for clear error only, Purdy, 382 F.3d at 782, since “a party ... is not required to prove his case in full.” Univ. of Tex. v. Camenisch, 451 U.S. 390, 395, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981). The Wolpe and Ball declarations provide sufficient evidentiary support for the district court’s findings.
The district court’s factual determination about the character of the challenged disclosures is also supported by the Supreme Court’s reasoning in Roe, Akron, and Casey. In our review of trial court factual determinations, we have distinguished between adjudicatory and legislative factfinding. Qualley v. Clo-Tex Int’l, Inc., 212 F.3d 1123, 1128 (8th Cir.2000). Unlike adjudicatory factfinding, legislative factfinding relates to facts which do not vary based on the activities or characteristics of particular litigants. Id.; see also A Woman’s Choice-East Side Women’s Clinic v. Newman, 305 F.3d 684, 689 (7th Cir.2002). Once resolved by an appellate court, issues of legislative fact need not be relitigated in lower courts each time they arise anew. See Carhart v. Gonzales, 413 F.3d 791, 800-01 (8th Cir.2005) (whether substantial medical authority supports a need for a health exception to a late term abortion ban was a question of legislative fact addressed by the Supreme Court in *724 Stenberg v. Carhart, 530 U.S. 914, 120 S.Ct. 2597, 147 L.Ed.2d 743 (2000)); Newman, 305 F.3d at 689 (same).
The district court was entitled to determine at this stage that whether a fetus or embryo is a “whole, separate, unique, living human being” as a matter of objective science is a question of legislative fact already addressed by the Supreme Court. The Court held in Roe that the state of Texas had no compelling interest in forbidding abortion from the moment of conception. 410 U.S. at 159, 93 S.Ct. 705. The factual underpinning for this holding was the Court’s finding that there was no medical, scientific, or moral consensus about when life begins, making the question of when a fetus or embryo becomes a human being one of individual conscience and belief. Id. at 159-63, 93 S.Ct. 705. The Court later relied on this assessment in Akron to strike down part of an informed consent law which compelled abortion providers to tell their patients that “the unborn child is a human life from the moment of conception.” 462 U.S. at 444, 103 S.Ct. 2481. The Akron majority reasoned that under Roe, states could not “adopt one theory of when life begins to justify ... regulation of abortions.” Id. (citing Roe, 410 U.S. at 159-62, 93 S.Ct. 705). To the extent that Akron interpreted Roe to bar enactment of any informed consent requirement intended to promote childbirth in order to protect “potential life,” it was overruled by Casey. 505 U.S. at 876, 112 S.Ct. 2791. The Court gave no indication in Casey, however, that it was repudiating its view about the lack of a medical, scientific, or moral consensus as to when human life begins. Cf. id. at 852, 112 S.Ct. 2791 (“some deem [abortion to be] nothing short of an act of violence against innocent human life”)(emphasis added). And because the Supreme Court did not repudiate its position, it is not for us to do so. See Rodriguez de Quijas v. Shearson/Am. Express, Inc., 490 U.S. 477, 484, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989) (courts of appeals should leave it to the Supreme Court expressly to overrule its own decisions).
Legislative factfinding in this case implicates mixed questions of constitutional law and fact. Cf. Carhart, 413 F.3d at 797-98; Newman, 305 F.3d at 689. At this stage we do not evaluate whether the lower court’s constitutional conclusions were correct so long as the underlying question was close. Nixon, 428 F.3d at 1145. Even if the court’s reasoning was correct based on the evidence before it when it decided the motion for a preliminary injunction, the parties have continued to develop the record in the district court, giving South Dakota the opportunity to try to establish that its terminology is supported by a firm medical consensus due to new scientific and technological developments. See Casey, 505 U.S. at 860, 112 S.Ct. 2791 (relying on advances in neonatal care to declare Roe’s trimester framework obsolete). Since the district court’s determination about the ideological nature of the challenged disclosures was not clearly erroneous, however, it was entitled to hold that requiring doctors both to give these disclosures in writing to patients and certify that the patients “understand” them is likely to constitute compelled speech in violation of the First Amendment. See Wooley, 430 U.S. at 715, 97 S.Ct. 1428.
South Dakota argues that even if these challenged disclosure requirements do constitute compelled speech, they are justified under the second part of the Wooley test by its compelling state interests in protecting fetal life and maternal psychological health. Id. at 715-16, 97 S.Ct. 1428. Planned Parenthood responds that South Dakota’s interests could be protected by less burdensome requirements. Even if the protection of potential fetal life and *725 maternal health are compelling interests, see Casey, 505 U.S. at 871, 882, 112 S.Ct. 2791, South Dakota has not shown that the challenged disclosure requirements are the least burdensome means at its disposal. Cf. Pacific Gas, 475 U.S. at 19-20, 106 S.Ct. 903. The district court was not obligated to find the disclosures to be justified by compelling state interests.
South Dakota finally contends that even if these challenged disclosure requirements likely were in facial violation of the First Amendment, the district court still erred in granting preliminary injunctive relief because § 7 of the Act could be construed to permit physicians to disassociate themselves from the ideological message they are required to convey. Planned Parenthood counters that if there were such a disassociation right in the Act, it would not remedy the constitutional injury-
The 2005 Act makes no mention of any right of a physician to disassociate herself from the statements she is required to give the patient, and it is questionable that one may be inferred under a statute which makes a provider’s failure to comply with its terms a criminal act. S.D.C.L. § 34-23A-10.2. Where the meaning of a state statute is unclear, federal courts should avoid granting or denying preliminary injunctive relief based on a construction urged by one of the parties and instead consider the statutory ambiguity itself as a factor. Nixon, 428 F.3d at 1144. Moreover, any such disassociation right would be chilled by the requirements that the physician certify in writing both that the compelled statements were made and that they were understood by the patient. These requirements would likely diminish both the ability of a physician to disassociate herself and the effect of any communication of her own views.
In any event, whether § 7 of the Act could be interpreted to permit physicians to disassociate themselves from the challenged disclosures would appear to have little impact on Planned Parenthood’s likelihood of success on the merits. A physician’s right to disassociate herself from an informed consent to abortion disclosure becomes constitutionally relevant under Casey if the required information is misleading as applied to a specific patient, even though it is generally neutral and accurate. See Fargo Women’s Health Org. v. Schafer, 18 F.3d 526, 533-34 (8th Cir.1994). Where the required disclosure primarily conveys a subjective political, ideological, or moral viewpoint rather than medical facts, the issue becomes not the message itself, but the physician’s right to control her own expression for “the choice to speak includes within it the choice of what not to say.” Pac. Gas, 475 U.S. at 16, 106 S.Ct. 903. Even though the utility company in Pacific Gas was free to add materials with its billing statements to rebut the hostile assertions the company was forced to include, the Court found this type of “forced response” to be “antithetical to the free discussion that the First Amendment seeks to foster.” IcL at 911-12. Similarly, the injury which results from forcing an abortion provider to recite the state’s ideological objections to abortion would not be eliminated by simply allowing her to add her own views.
The new Act also circumscribes the exercise of physicians’ medical judgment more than the statute examined in Casey. The physician’s right to exercise medical judgment has been recognized since Roe, which “vindieate[d] the right of the physician to administer medical treatment according to his professional judgment” up until the point of viability. Roe, 410 U.S. at 163, 93 S.Ct. 705. The statute challenged in Casey preserved a physician’s ability to exercise medical judgment because it al *726 lowed a doctor to choose not to obtain informed consent if “he or she reasonably believed that furnishing the information would have resulted in a severely adverse effect on the physical or mental health of the patient.” Casey, 505 U.S. at 883-84, 112 S.Ct. 2791. Under the South Dakota Act, a physician can proceed with an abortion without obtaining informed consent only if it would be impossible to obtain it. If a physician were reasonably to believe that providing the disclosures required by the Act would be detrimental to the health and safety of a particular patient, she would be prevented from exercising her medical judgment to proceed without the advisories if it would be possible for her to obtain informed consent. This is counter to the law upheld in Casey. See id.
Planned Parenthood additionally argues that the required disclosures likely violate the rights of women seeking abortion because the disclosures are misleading and patients are forced to listen to the state’s ideological message. South Dakota suggests that Planned Parenthood lacks standing to assert these claims because the interests of abortion providers do not align with those of their patients. It also repeats its assertion that the disclosures contain nothing but neutral facts.
Although ordinarily one may not claim standing to assert the rights of a third party, the Supreme Court has carved out an exception for physicians asserting their patients’ right to have access to abortion. Singleton v. Wulff, 428 U.S. 106, 114-18, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976). Singleton did not adopt a per se rule, id. at 118 n. 7, 96 S.Ct. 2868, but the Court has never held since then that a physician lacks standing in this context. The test is not whether interests are perfectly aligned, but whether the plaintiff physician will “adequately represent” the absent woman’s constitutional rights. Ok-palobi v. Foster, 190 F.3d 337, 353 (5th Cir.1999). We conclude that Planned Parenthood has standing here to assert the liberty interest of its patients.
States may not enact regulations which unduly burden a woman’s right to terminate her pregnancy before viability of the fetus by placing a substantial obstacle in her path. Casey, 505 U.S. at 876-77, 112 S.Ct. 2791. The required disclosure of truthful, nonmisleading factual information does not pose a substantial obstacle, whether or not the purpose is to advocate childbirth. Id. at 882-83, 112 S.Ct. 2791. That remains true even if the provision of information causes some incidental delay and inconvenience. See id. at 874, 112 S.Ct. 2791; Schafer, 18 F.3d at 533. It is entirely appropriate for a state to mandate that certain information be provided to women contemplating abortion in order to protect both potential life and maternal health by ensuring that the decision about whether to abort is “mature and informed.” Casey, 505 U.S. at 883, 112 S.Ct. 2791. However, “the means chosen by the State to further the interest in potential life must be calculated to inform the woman’s free choice, not hinder it.” Id. at 877, 112 S.Ct. 2791. Disclosure requirements which hinder a woman’s free and informed choice rather than assist it would violate Casey.
We have been unable to find any case in which a federal appellate court has considered disclosure requirements at all similar to those challenged here. Those upheld since Casey concerned disclosure requirements which provided factual information to women contemplating abortion. See Karlin v. Foust, 188 F.3d 446 (7th Cir.1999); Fargo Women’s Health Org. v. Schafer, 18 F.3d 526 (8th Cir.1994); Barnes v. Moore, 970 F.2d 12 (5th Cir.1992). Here, in contrast, before a woman seeking an abortion may obtain access to a *727 medical procedure, she is required to receive extensive information about the state’s viewpoints about the procedure. Her physician must also certify page by page that the patient has understood those viewpoints and all the other information required by the state. As South Dakota points out, a woman considering abortion is likely to be in a state of heightened emotion and vulnerability. Forcing her not only to read, but to sign each page of a statement containing the state’s moral and philosophical objections to the procedure she has planned and intends to undergo, and forcing her doctor to certify that she “understands” these objections, does little to promote independent decision making and may actually exacerbate any adverse psychological consequences of the procedure. Such disclosure requirements are far more onerous than what federal courts have previously reviewed, and there is at least a “fair chance” that they pose an undue burden. Waddle, 335 F.3d at 690.
Because the challenged disclosures could be found to violate both the First Amendment rights of physicians and the due process rights of women seeking abortion, we conclude that the district court did not abuse its discretion in holding at this pre-hminary stage that Planned Parenthood demonstrated a likelihood of success on the merits.
B.
Although likelihood of success is likely the most critical Dataphase factor, the others must also be considered. Kirkeby v. Furness, 52 F.3d 772, 775 (8th Cir.1995). We next turn to the threat of irreparable harm. South Dakota argues that the district court erred in finding a threat of irreparable harm, asserting that the Act is constitutional. Planned Parenthood counters that the challenged provisions are constitutionally suspect and that any violation of First Amendment rights constitutes irreparable harm.
We have previously recognized that “the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.” Kirkeby, 52 F.3d at 775. Kirkeby involved the First Amendment right of abortion opponents to picket the residences of providing physicians, and we concluded that the plaintiffs had a strong interest protected by the First Amendment. Id. The interest abortion providers have in expressing their own personal views on abortion is likely no less than that of their opponents. In light of its reasonable determination at this stage that the challenged disclosures express a primarily subjective ideological viewpoint, the district court did not abuse its discretion in concluding that the plaintiffs here also demonstrated a threat of irreparable harm.
We next consider the balance of the harms. South Dakota argues that issuance of the preliminary injunction poses significant risk of harm to pregnant women, citing not only the constitutional interest such women have in making informed medical decisions for themselves, Casey, 505 U.S. at 882, 112 S.Ct. 2791, but also the interests they have in their familial relationships and in making decisions for their children. See, e.g., Troxel v. Granville, 530 U.S. 57, 74, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000); Smith v. Org. of Foster Families, 431 U.S. 816, 845, 97 S.Ct. 2094, 53 L.Ed.2d 14 (1977). Planned Parenthood responds that the district court reasonably balanced the harms, since South Dakota’s prior “robust” informed consent law was left in place.
In the course of its opinion the district court considered the First Amendment rights of physicians as well as the rights of *728 women not to be unduly burdened by state imposed obstacles to abortion, and those interests are appropriately weighed with those of South Dakota in the balance of harms. Since violations of the Act may subject abortion providers to criminal penalties, there is added potential harm for “[cjonstitutional concerns are greatest when the State attempts to impose its will by [such] force of law....” Maher v. Roe, 432 U.S. 464, 475, 97 S.Ct. 2376, 53 L.Ed.2d 484 (1977).
South Dakota has not shown that the prior informed consent law fails to give adequate protection to the interests of pregnant women during the pendency of the temporary injunction. The 1993 law which remains in effect requires a woman contemplating abortion to be told not only about the potential health risks associated with abortion, but also about the probable gestational age of her unborn child and many of the rights and obligations which will accompany that child’s birth. It is highly improbable that after such disclosures, a patient would still be under the impression that the fetus or embryo she carried was “just tissue,” as one witness before the South Dakota legislature said she had been told about her own abortion. In fact, none of the women whose legislative testimony and declarations in the record indicate they were misinformed before their abortions had the benefit of the 1993 law. Their abortions had taken place either before passage of the 1993 statute or in other states. Moreover, there is no evidence in the record to indicate that Planned Parenthood, currently the only abortion provider in South Dakota, has sought to mislead or otherwise coerce women into violating their beliefs by having abortions. The district court did not abuse its discretion in balancing the harms.
Finally, the public interest must be considered. South Dakota argues that it would be better served by allowing the Act to go into effect, “thereby protecting women contemplating abortions, as well as their unborn children.” Planned Parenthood responds that the public interest is served by the legislature acting within its constitutional limits.
The right to control one’s expressive communication is “at the core of the First Amendment,” Olmer v. City of Lincoln, 192 F.3d 1176, 1180 (8th Cir.1999), and the public interest is served by “free expression on issues of public concern” like abortion. Kirkeby, 52 F.3d at 775. Accordingly, we have previously required or upheld preliminary injunctive relief against laws which burdened the expressive rights of those opposed to legal abortion who have sought to take their message to places where legitimate concerns about public safety and privacy might otherwise have justified its exclusion. Kirkeby, 52 F.3d at 776; see also Olmer, 192 F.3d at 1180 (First Amendment right to picket churches). The need for First Amendment protection is no less apparent with respect to abortion providers, and the 1993 law continues to ensure that women considering abortion will receive much of the state’s desired disclosures. We conclude there was no abuse of discretion with respect to this final Dataphase factor.
C.
South Dakota finally argues that the district court erred in enjoining all of the new provisions in § 7 of the Act. It contends that the district court should have enjoined only the challenged disclosures discussed in its opinion and that the sever-ability provision in § 11 should control. Planned Parenthood counters that the district court properly complied with § 10 of the Act which provides that if provisions of *729 § 7 are enjoined, the prior informed consent law remains in effect in its entirety.
Section 11 of the Act states that “if any court of law finds any provisions of section 7 of this Act to be unconstitutional, the other provisions of section 7 are severa-ble.” S.D.L. ch. 186, § 11. The precondition for severability has not been met in this case, for no court has found any provision of the Act to be unconstitutional. At this point only a temporary injunction has been put in place while the case is being further developed in the district court before a ruling on the merits can issue. The circumstances at this juncture are very different from those in Ayotte v. Planned Parenthood of N. New England, — U.S. —, 126 S.Ct. 961, 163 L.Ed.2d 812 (2006), where a statute was permanently enjoined. Here South Dakota’s general legislative policy on informed consent in the form of its 1993 law remains in effect during the pendency of the temporary injunction.
The present situation actually fits squarely under § 10 of the Act. Section 10 states that the prior informed consent law will remain in effect “if any court of law enjoins, suspends, or delays the implementation of the provisions of section 7 of this Act.” Id. § 10. Section 10 contains no severability provision, and it was not for the district court to imply one by picking and choosing which provisions of the Act should be allowed to go into effect prior to a final judgment. See Café Erotica of Florida, Inc. v. St. John’s County, 360 F.3d 1274, 1292 (11th Cir.2004) (“The interests of federalism and comity dictate conseivatism to federal courts in imposing their interpretive views on state statutes.”). The dissent’s contention that § 10 is only relevant if a court were to enjoin all of the provisions in § 7 is not persuasive. Its argument rests on reading the word “all” into the text of the statute, a word which was not used by the South Dakota legislature. We conclude that the district court gave effect to § 10 by following its mandate to keep the 1993 statute effective until this case is resolved.
D.
We conclude for these reasons that the district court did not abuse its discretion, and we thus affirm its temporary injunction.

. The Honorable Karen E. Schreier, Chief Judge, United States District Court for the District of South Dakota.

. The state officials shared their oral argument time with crisis pregnancy centers Alpha Center and Black Hills Crisis Pregnancy Center and their staff members, all of whom were granted leave to intervene after this appeal was filed.

.A class 2 misdemeanor is punishable by up to 30 days imprisonment and/or a $500 fine; restitution may also be ordered. S.D.C.L. § 22-6-2.

. Planned Parenthood also argued that the new disclosure requirements in § 7 regarding the psychological risks of abortion and information about nearby crisis pregnancy centers are unconstitutionally vague and that the requirement for obtaining informed consent, unless a medical emergency makes it "impossible,” unconstitutionally endangers the life and health of pregnant women. The district court did not discuss these arguments.