MURPHY, Circuit Judge.
Planned Parenthood of Minnesota, North Dakota, South Dakota and its medical director Dr. Carol E. Ball (collectively Planned Parenthood) brought this equitable action against Governor Mike Rounds and the South Dakota Attorney General[1] (collectively South Dakota) in their official capacities seeking to enjoin enforcement of revisions enacted in 2005 to the South Dakota law on informed consent to abortion. Alpha Center and Black Hills Crisis Pregnancy Center, crisis pregnancy centers located in South Dakota, and their individual staff members intervened. In 2008 our court sitting en banc reversed a preliminary injunction granted to Planned Parenthood in the district court and remanded for further consideration.[2] On remand the district court granted summary judgment on four statutory provisions challenged by Planned Parenthood, upholding some and striking down others as unconstitutional under the First and Fourteenth Amendments. Planned Parenthood, South Dakota, and the intervenors appeal. After careful consideration of the individual statutory provisions and the arguments of the interested parties, we affirm in part and reverse in part.
I.
In 2005 South Dakota enacted House Bill 1166 (the Act) which is the subject of this action. The Act amended South Dakota’s Public Health and Safety Code, expanding the requirements for informed consent to abortion. Under § 7 of the Act, each woman contemplating abortion is to be given oral advisories[3] twenty four hours in advance of the procedure by the doctor scheduled to perform the abortion or by the doctor’s designee. The doctor must give other written advisories at least two hours before the procedure.
The written advisories required by § 7(1) are to inform the patient
(b) That the abortion will terminate the life of a whole, separate, unique, living human being [the human being advisory];
(c) That [the patient] has an existing relationship with that unborn human being and that the relationship en *666 joys protection under the United States Constitution and under the laws of South Dakota;
(d) That by having an abortion, her existing relationship and her existing constitutional rights with regards to that relationship will be terminated [collectively the relationship advisories].
S.D.C.L. § 34-2SA10.1(l)(b)-(d). The advisory must further contain “[a] description of all known medical risks of the procedure” (the risk advisory). Id. § 34-23A-10.1(l)(e). That description must include “[increased risk of suicide ideation and suicide” as a known risk of abortion (the suicide advisory). Id. § 34-23A-10.1(l)(e)(ii). The Act also requires doctors to provide patients with the name, address, and telephone number of a nearby crisis pregnancy center twenty four hours before the scheduled procedure. Id. § 34-23A-10.1(2)(e).[4]
After the patient has read the written portion of the required communications, § 7 requires that she sign each page of the statement verifying that she has understood all the information provided. Id. § 34-23A-10.1(l) ¶ 2. If she asks about any of the required advisories or has any other significant question, the doctor must respond in writing. Id. That response becomes part of the patient’s permanent medical record. Id. Once all of the required communications have been made, the doctor must certify that the patient “understands the information imparted.” Id. A doctor who performs an abortion without meeting these requirements is subject to criminal prosecution. Id. § 34-23A-10.2 ¶ 1.
Before the Act was scheduled to take effect in 2005, Planned Parenthood brought its facial challenge to the constitutionality of the statute under the First and Fourteenth Amendments. It moved for a preliminary injunction enjoining its enforcement. The district court held in Planned Parenthood Minnesota, North Dakota, South Dakota v. Rounds, 375 F.Supp.2d 881 (D.S.D.2005), that the human being advisory violated doctors’ First Amendment rights on its face and that invalidation of any portion of the Act required injunctive relief. While a divided panel of this court affirmed, 467 F.3d 716 (8th Cir.2006), its decision was overturned by the en banc court which reversed, holding that the required human being advisory did not on its face violate the First Amendment. Planned Parenthood Minn., N.D., S.D. v. Rounds, 530 F.3d 724, 735-36 (8th Cir.2008) (en banc). It vacated the preliminary injunction and remanded to the district court for resolution of Planned Parenthood’s other facial challenges to the Act. Id. at 738.
On remand South Dakota and the intervenors moved for summary judgment in their favor as to the human being advisory, the relationship advisories, the suicide advisory, and the risk advisory. Planned Parenthood in turn moved for summary judgment in its favor as to the latter three provisions, as well as two others not at issue on appeal. The district court granted summary judgment in favor of South Dakota on the human being and risk advisories and in favor of Planned Parenthood on the relationship and suicide advisories. South Dakota and the intervenors[5] now *667 appeal the rulings in Planned Parenthood’s favor, and Planned Parenthood cross appeals the rulings in South Dakota’s favor.
II.
On appeal from a district court’s grant of summary judgment we review findings of fact for clear error and conclusions of law de novo. Royer v. City of Oak Grove, 374 F.3d 685, 687 (8th Cir.2004).
A.
Planned Parenthood continues to challenge a provision that the en banc court has already upheld in Planned Parenthood Minn., N.D., S.D. v. Rounds, 530 F.3d 724, 737 (8th Cir.2008), as did the district court on our subsequent remand. 650 F.Supp.2d 972, 976 (D.S.D.2009). This provision is in section 7(l)(b) which requires doctors to provide patients with certain advisories which include a written statement “with the following information: ... That the abortion will terminate the life of a whole, separate, unique, living human being.” S.D.C.L. § 34-23A-10.1(l)(b). A separate code section defines a human being as “an individual living member of the species of Homo sapiens, including the unborn human being during the entire embryonic and fetal ages from fertilization to full gestation.” Id. § 34-23A-1(4). To comply with § 7, a doctor must certify in writing that he or she believes that the woman understands this statement. Id. § 34-23A-10.1 ¶ 2.
The human being advisory requires that the pregnant woman be told that an abortion will “terminate the life of a whole, separate, unique, living human being.” The en banc court held that this provision withstood a First Amendment challenge because it must be read together with the Act’s definition of human being. 530 F.3d at 735. Because “human being” has only a “narrow, species-based” meaning in this context, the advisory conveys “scientific[ ] and factual[ ]” information that “should be clear in context to a physician.” Id. at 736. Planned Parenthood now argues that in focusing on the statutory definition of “human being” in § 34-23A-l(4), Rounds implicitly held that South Dakota may not compel doctors to use the exact language of the human being advisory contained in § 34-23A-10.1(l)(b). South Dakota responds that Rounds upheld that human being advisory unconditionally.
It is significant here that Planned Parenthood has challenged § 7 on its face, not as applied to any particular party or circumstance. Our court has recognized that facial challenges to abortion statutes can succeed only if a plaintiff can show that “in a large fraction of the cases in which [the law] is relevant, it will operate as a substantial obstacle to a woman’s choice to undergo an abortion.” Planned Parenthood of Se. Pa. v. Casey, 505 U.S. 833, 895, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992). This standard is somewhat different than that applicable to facial challenges in general, where the proponent must establish that “no set of circumstances exists under which the [statute] would be valid.” United States v. Salerno, 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987). Our court has joined every other circuit which has decided the issue[6] by “adopting] the *668 standards enunciated by the Casey plurality opinion as controlling precedent in abortion cases.” Rounds, 530 F.3d at 734 n. 8. The Supreme Court has chosen not to intervene. Gonzales, 550 U.S. at 167, 127 S.Ct. 1610.
The en banc court rejected Planned Parenthood’s facial challenge to the human being advisory under the same standard we apply today. Planned Parenthood has not demonstrated that the human being advisory would present an undue burden “in a large fraction of the cases in which [it] is relevant.” 505 U.S. at 895, 112 S.Ct. 2791. In reaching that conclusion our court did not imply that as a matter of statutory construction, § 7(l)(b) forces doctors to use its exact words. Having already upheld the statute’s facial validity, we decline to go further since Planned Parenthood has not brought an as applied challenge to § 7. It is neither the judiciary’s “obligation nor within [its] traditional institutional role to resolve questions of constitutionality with respect to each potential situation that might develop.” Gonzales, 550 U.S. at 168, 127 S.Ct. 1610. Only an “as applied” challenge would be an appropriate vehicle to consider the case of a doctor using other language in giving this advisory.
Because Rounds upheld the human being advisory against a facial challenge, the district court certainly did not err in doing the same. It should therefore be affirmed.
B.
Planned Parenthood also challenges the § 7 requirement that before performing an abortion doctors must tell each pregnant woman “that [she] has an existing relationship with that unborn human being and that the relationship enjoys protection under the United States Constitution and under the laws of South Dakota.” S.D.C.L. § 34-23A-10.1(l)(c). Doctors must further advise each woman that “by having an abortion, her existing relationship and her existing constitutional rights with regards to that relationship will be terminated.” Id. § 34-23A-10.1(l)(d). Planned Parenthood has facially challenged the relationship advisories under the Fourteenth and First Amendments as unduly burdening a woman’s fundamental right to have an abortion and as compelling physicians’ speech beyond a reasonable regulation of the practice of medicine. The district court found the relationship advisories unconstitutional without identifying a specific constitutional basis for that decision.
On appeal, the parties disagree as to the meaning of the relationship advisories as well as their constitutionality. South Dakota represented at oral argument that the relationship advisories “can be taken to mean that the Constitution protects a woman from being forced to have an abortion.”[7] The advisories responded to the South Dakota legislature’s concern that “people getting abortions ... feel coercion, they feel pressure, they feel alone.” Id. When asked at oral argument whether having a “protected relationship” means that a woman “can’t be forced to have an abortion,” counsel for the state answered, “Yes, absolutely.” He went on to say that the relationship advisories “can be taken to mean that the Constitution ... protects] a woman from being forced to have an abortion ... and that the laws of the state of South Dakota also protect a woman’s relationship. That’s really all you have to say. That’s it.” The intervenors characterize the relationship as a “relationship in fact.”
*669 Planned Parenthood urges that the relationship advisories have no stable meaning and that they unconstitutionally compel ideological speech by doctors since there are “moral and philosophical messages inherent in some of [the advisories’ possible] meanings.” Brief for Appellee at 39. Without a statutory definition of “relationship” to guide its construction, the statute “certainly [could] be read to make a point in the debate about the ethics of abortion,” as the en banc court observed of the human being advisory before considering that provision in the context of the statute as a whole. Rounds, 530 F.3d at 735.
An abortion regulation creates an undue burden and thus violates due process if it “has the purpose or effect of placing a substantial obstacle in the path of a woman seeking an abortion of a nonviable fetus.” Planned Parenthood of Southeastern Pa. v. Casey, 505 U.S. 833, 877, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992). Informed consent requirements “must be calculated to inform the woman’s free choice, not hinder it.” Id. at 877, 112 S.Ct. 2791. Because an informed consent requirement must “facilitate! ] the wise exercise” of a woman’s right to abortion, such a requirement presents an undue burden unless it provides “truthful and not misleading” information. Id. at 882, 112 S.Ct. 2791. As earlier discussed, a party bringing a facial challenge to an abortion statute must show that the law presents an undue burden “in a large fraction of the cases in which [it] is relevant.” Casey, 505 U.S. at 895, 112 S.Ct. 2791; Rounds, 530 F.3d at 734 n. 8 (noting that our court has adopted Casey’s standards as controlling).
Planned Parenthood fears the relationship advisories could be construed as requiring informing the woman that abortion is morally wrong, which would hinder rather than inform her free choice, see Casey, 505 U.S. at 877, 112 S.Ct. 2791, and would also require doctors to engage in ideological speech, which a state may not compel even from heavily regulated entities. Wooley v. Maynard, 430 U.S. 705, 714, 97 S.Ct. 1428, 51 L.Ed.2d 752 (1977); Pac. Gas & Elec. Co. v. Pub. Util. Comm’n of Cal., 475 U.S. 1, 8, 106 S.Ct. 903, 89 L.Ed.2d 1 (1986) (plurality opinion).
The parties have thus offered varying constructions of the South Dakota statute, “by [some] of which grave and doubtful constitutional questions arise and by [an]other of which such questions are avoided.” United States v. Adler, 590 F.3d 581, 583 (8th Cir.2009) (quoting Harris v. United States, 536 U.S. 545, 555, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002)). The court’s “duty is to adopt the latter.” Id. at 584. This is especially so since “[i]n evaluating a facial challenge to a state law, a federal court must ... consider any limiting construction that a state ... enforcement agency has proffered.” Kolender v. Lawson, 461 U.S. 352, 355, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983).
With all of this in mind, we adopt the reasonable reading South Dakota proposes and hold that § 7 requires a statement that the woman seeking abortion is legally and constitutionally protected against being forced to have an abortion. Since no one can require her to have an abortion, this reading conveys legal information that is truthful, not misleading, and relevant to the abortion decision. Section 7 itself forbids abortion without a woman’s “voluntary ... consent,” S.D.C.L. 34-23A-10.1 ¶ 1, and the Supreme Court has recognized a due process right to have children. Washington v. Glucksberg, 521 U.S. 702, 720, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997).
Since the relationship advisories thus construed can be constitutionally applied to a “large fraction” of the women to whom they are relevant, 505 U.S. at 895, 112 S.Ct. 2791, they are valid on their face. *670 The district court therefore erred in holding them unconstitutional.
C.
Another portion of § 7 challenged by Planned Parenthood requires that doctors describe “all known medical risks” of abortion, including “[ijncreased risk of suicide ideation and suicide” (collectively suicide). S.D.C.L. § 34-23A10.1 (1)(e)(ii). The district court granted summary judgement in Planned Parenthood’s favor in respect to it, holding that this provision would unduly burden a woman’s right to voluntary abortion and would violate doctors’ First Amendment right to be free from compelled speech. South Dakota and the intervenors appeal, arguing that the suicide advisory presents no undue burden and requires only a truthful and nonmisleading statement. The question on appeal is whether this advisory is “untruthful, misleading or not relevant to the patient’s decision to have an abortion.” Rounds, 530 F.3d at 735.
We begin by examining what this part of the statute requires doctors to tell patients who have come for abortions. They must describe to the patient “all known medical risks of abortion.” Since the word “known” is not defined in the statute, we consider its ordinary meaning. See Gonzales, 550 U.S. at 152, 127 S.Ct. 1610. In ordinary use “known” means “generally recognized,” “proved,” or “familiar to all.” Merriamr-Webster’s Collegiate Dictionary 691 (11th ed. 2007); The American Heritage Dictionary of the English Language 971 (4th ed. 2006); Shorter Oxford English Dictionary 1519 (vol. 1) (6th ed. 2007). Thus, the inclusive statement that “increased risk of suicide and suicide ideation are known medical risks of abortion” must be understood as opining that those conditions are generally recognized, proven, or familiar risks of abortion.
The statute also does not define “risk,” but medical dictionaries generally agree on that term’s several possible meanings. “Absolute risk” is the “[pjrobability that a specified event will occur in a specified population.”[8] Stedman’s Medical Dictionary 1701 (28th ed. 2006). “Attributable risk” means “the rate of a disease ... in exposed individuals that can be attributed to the exposure.” Id. In respect to the statute’s suicide advisory, attributable risk would refer to the rate of suicide attributable to a woman’s having had an abortion. “Relative risk” refers to “the ratio of the risk of disease among those exposed to a risk factor to the risk among those not exposed.” Id. The other definitions are of unlikely relevance here, as they refer to family related risk or to issues of research design. See Dorland’s Illustrated Medical Dictionary 1674 (31st ed. 2007) (defining competing, empiric, and genetic risk). Of special significance in this case is the reality that risk has varying meanings and that its usage is not clarified in the statute.
The dissent assumes without explanation that the legislature must have intended “increased risk” to refer specifically to “relative risk.” The legislature’s usage of “increased risk” does not support the dissent’s theory, however. Attributable risk, absolute risk, and other types of medical risk can also be increased or decreased. Nothing in the advisory forecloses a patient from understanding it to mean that abortion would increase her absolute risk of suicide, for example from two to five percent.
Moreover, in the context of this statute a court cannot assume that the legislature had any one of several competing defini *671 tions of medical risk clearly in mind. The suicide advisory appears in the same subsection of § 7 that requires doctors to “deseri[be] ... [all] statistically significant risk factors to which the pregnant woman would be subjected” by abortion. S.D.C.L. § 34-23A-10.1(l)(e). The statute does not define “risk factor.” After reviewing expert testimony, however, the district court concluded that “a ‘risk factor’ refers to a predisposing condition that a patient has before a procedure” rather than a risk resulting from a procedure. 650 F.Supp.2d at 981 (emphasis added). The statute thus used “risk factor” in a manner inconsistent with its medical meaning, leaving doctors “to guess as to the meaning the legislature intended to give to the phrase.” Id. The district court therefore enjoined enforcement of the “risk factor” provision, a ruling neither South Dakota nor the intervenors have attacked. The district court concluded that the legislative drafters “may not have fully understood the meaning of this phrase as used in the medical profession.” Id. It does not appear from the record that the word “risk” was used with the technical precision that the dissent would attribute to it.
Even if we were entitled to incorporate the term “relative risk” into the suicide advisory, rather than to “confine [ourselves] to the language used” in the statute as South Dakota rules of interpretation require, see Langdeau v. Langdeau, 751 N.W.2d 722, 727 (S.D.2008), the advisory would not be made truthful, nonmisleading, and relevant. “Relative risk” incorporates the concept of a “risk factor,” see Stedman’s 1701; Borland’s 1674, which may or may not denote causation of an increased risk. See Mosby’s Dictionary of Medicine, Nursing & Health Professionals 1634 (8th ed. 2009) (a risk factor “causes a person ... to be particularly susceptible to an unwanted ... event”) (emphasis added); Taber’s Cyclopedic Medical Dictionary 2046 (21st ed. 2009) (risk factor “predisposes an individual to the development of a disease”); Dorland’s 685 (denoting a risk factor “may or may not” imply causality); but see Stedman’s 697 (a risk factor is “not necessarily causally related to” an increased risk). Nothing in the advisory would prevent the unproven inference that the “increased risk” mentioned in § 7 is increased by abortion. See Stedman’s at 1701 (defining “attributable risk”).
The record does not demonstrate a generally recognized causal connection between abortion and suicide. In fact, it reveals vigorous debate over whether an apparent statistical correlation results from common cofactors rather than a showing that one causes the other. In the course of evaluating relevant peer reviewed literature, the American Psychological Association concluded that there is no evidence that risk of mental health problems among women who abort unwanted pregnancies is any greater than that of women who miscarry or deliver such pregnancies. Brenda Major et al., American Psychological Association, Report of the APA Task Force on Mental Health and Abortion 68 (2008).
Section 7 as written could mislead women who have unwanted pregnancies into believing that choosing abortion would increase their risk of suicide. Id. at 11 (92% of abortions are of unintended pregnancies); see Casey, 505 U.S. at 895, 112 S.Ct. 2791 (considering the “large fraction of the cases in which [an abortion statute] is relevant”). The American Psychological Association report illustrates the fallacy of the dissent’s proposed rewording of the suicide advisory which would assert that the “relative risk of suicide and suicide ideation is higher for women who abort their pregnancies compared to women in other relevant groups.” The critical point is that data are lacking on the most relevant oth *672 er group — that being women who carry-unwanted pregnancies to term. Without that data it is not possible to talk about any effect of abortion on suicide risk.
Before granting summary judgment to Planned Parenthood on this issue, the district court considered a report by South Dakota expert Dr. Elizabeth M. Shadigian, who referenced reports by the American College of Obstetricians and Gynecologists, “the leading professional association of physicians who specialize in the health care of women.” 650 F.Supp.2d at 983. According to Dr. Shadigian, this specialized group of experts has rejected any connection between suicide risk and abortion as did the American Psychological Association. Also relevant to its position that suicide is not generally recognized as a danger of abortion is the labeling for the abortion inducing drug mifepristone. Although the FDA requires prescription drug labels to warn of all “clinically significant adverse reactions” and “other potential ... hazards,” 21 C.F.R. § 201.57(6)(i), it approved a label for mifepristone which did not mention suicide or suicide ideation.
South Dakota and the intervenors cite numerous peer reviewed articles, a portion of which concluded there is a causal relationship between suicide and abortion. The American Psychological Association report found several of these studies methodologically flawed because they failed to distinguish women with wanted pregnancies from women with unwanted pregnancies in evaluating the mental health effects of various pregnancy outcomes. Testimony by individual women reporting emotional problems after abortion has also been offered by South Dakota and the intervenors; all of these women had abortions either outside of South Dakota or before passage of the state’s earlier informed consent provisions.
While the dissent objects that “nothing in the record ... suggests] that abortion as a cause [of suicide] has been ruled out with certainty,” it overlooks the fact that “medical risks” is modified in the statute by the word “known.” Although the statute requires doctors to warn of all “known medical risks” of abortion, the dissent would read the word “known” out of the statute. S.D.C.L. § 34-23A-10.1(l)(e). Legislatures have “wide discretion to pass legislation in areas where there is medical and scientific uncertainty,” Gonzales, 550 U.S. at 163, 127 S.Ct. 1610, but the suicide advisory asserts certainty on the issue of medical and scientific knowledge where none exists. The advisory thus “very likely ... require[s] physicians to disclose information that is false.” Robert Post, Informed, Consent to Abortion: A First Amendment Analysis of Compelled Physician Speech, 2007 U. Ill. L. Rev. 939, 961 (2007). The district court did not err in concluding that the suicide advisory’s warning of “known” risks compels untruthful speech by doctors. An untruthful, misleading, or irrelevant advisory violates both a patient’s due process rights to voluntary abortion and a doctor’s First Amendment rights. Casey, 505 U.S. at 882, 112 S.Ct. 2791; Rounds, 530 F.3d at 735.
The required suicide advisory would significantly constrain doctors’ exercise of their professional judgment. South Dakota common law already requires doctors to inform patients of all the known material or significant risks of a medical procedure. Wheeldon v. Madison, 374 N.W.2d 367, 375 (S.D.1985). Thus, if a doctor considers suicide a known material risk of abortion, there is a common law duty to warn patients. Unlike the statutory suicide advisory, this common law rule has an exception for risks that are extremely remote. Id. It also affords a physician the discretion not to issue a warning which would cause severe emotional distress. Id. The requirements of the suicide advisory would *673 thus be redundant if a doctor were to believe that abortion posed a material risk of suicide to a patient and that advising her of it was unlikely to cause harm. The common law rule would compel a warning in these cases. In other cases the suicide advisory would have the effect of overriding doctors’ professional judgment by compelling a statement that a doctor believes immaterial or even dangerous.
Informed consent requirements in the abortion context “must be calculated to inform [a] woman’s free choice, not hinder it,” facilitating “wise” and “informed” decisions. Casey, 505 U.S. at 877, 887, 112 S.Ct. 2791. A compelled medical statement that contradicts in unequivocal terms the leading associations of experts in relevant fields does not serve that end. We conclude that the suicide advisory places a “substantial obstacle in the path of [women] seeking abortion,” id. at 878, 112 S.Ct. 2791, and thus violates due process. By compelling untruthful and misleading speech, the advisory also violates doctors’ First Amendment right to be free from compelled speech that is untruthful, misleading, or irrelevant. Id. at 882, 112 S.Ct. 2791; Rounds, 530 F.3d at 735. We conclude that the district court did not err in granting Planned Parenthood summary judgment as to the suicide advisory.
D.
Planned Parenthood has also challenged the risk advisory more broadly. Section 7 requires doctors to inform patients of “all known medical risks” associated with abortion, including but not limited to a few specific illnesses. Planned Parenthood argues that the risk advisory is void for vagueness because it may oblige doctors to warn of obscure or unproven medical risks of abortion. South Dakota responds that the advisory’s meaning should be clear to doctors, who already disclose “known material or significant” risks in any medical procedure as required by state common law. Wheeldon v. Madison, 374 N.W.2d 367, 375 (S.D.1985).
As discussed above, “known” means generally recognized, proved, or familiar to all. Since known risks include only generally recognized or familiar risks, a doctor of ordinary intelligence can be reasonably certain how to comply with the statute. Planned Parenthood has not shown that the risk advisory will cause confusion in any case, let alone the quantum of cases required to sustain a facial challenge. The district court did not err in upholding the risk advisory.
E.
For these reasons we reverse the judgment of the district court striking down the relationship advisories; affirm its ruling upholding the human being advisory approved in Rounds; and affirm its rulings upholding the general risk advisory and striking down the suicide advisory. Finally, we remand for further proceedings consistent with this opinion.

. Marty J. Jackley, the current Attorney General of South Dakota, is the successor to Larry Long who held that office when this case was initiated.

. Planned Parenthood Minn., N.D., S.D. v. Rounds, 530 F.3d 724, 735-36 (8th Cir.2008) (en banc) (six judges in the majority; one judge concurring in the judgment; four dissenting).

. Although the district court and the parties have used the word "disclosure'' in connection with information mandated by the Act, we believe the term "advisory” more precisely describes the process required by the law.

. After this appeal was submitted South Dakota enacted additional informed consent requirements. South Dakota H.B. 1217, 2011 Session. We do not consider those requirements here since they were not before the district court.

. Planned Parenthood has moved to strike the intervenors’ main brief on appeal for referencing a document stricken by the district court. Since the cited materials appear elsewhere in the record and were not themselves stricken, the motion to strike is denied, as is *667 the intervenors’ mooted motion for supplemental briefing.

. The five other circuits which have decided the standard for facial challenges in the abortion context have all chosen Casey's. See Cincinnati Women's Servs., Inc. v. Taft, 468 F.3d 361, 370 (6th Cir.2006); Planned Parenthood of N. New England v. Heed, 390 F.3d 53, 58 (1st Cir.2004), vacated on other grounds sub nom. Ayotte v. Planned Parenthood of N. New England, 546 U.S. 320, 126 S.Ct. 961, 163 L.Ed.2d 812 (2006); Planned Parenthood of Idaho, Inc. v. Wasden, 376 F.3d 908, 920 (9th Cir.2004); Planned Parenthood of the Rocky Mountains Servs. v. Owens, 287 F.3d 910 (10th Cir.2002); Planned Parenthood of Cent. N.J. v. Farmer, 220 F.3d 127, 142 (3d Cir.2000).

. A recording of the argument is available at http://8cc-www.ca8.uscourts.gov/OAaudio/ 2011/1/093231.mp3.

. The intervenors’ expert likewise defined absolute risk as "the chance of developing a disease over a time-period (e.g., a 10% lifetime risk of suicide)."